ALEXANDER FINLAY AND JOHN MITCHELL, PLAINTIFFS IN ERROR
*vs.* WILLIAM KING'S LESSEE.

The testator was seised of a very large real and personal estate, in the states of Virginia, Kentucky, Ohio and Tennessee. After making, by his will, in addition to her dower, a very liberal provision for his wife, for her life, out of part of his real estate, and devising, in case of his having a child or children, the whole of his estate to such child or children, with the exception of the provision for his wife, and certain other bequests; his will declares:

"In case of having no children, I then leave and bequeath all my real estate at the death of my wife, to William King, son of brother James King, on condition of his marrying a daughter of William Trigg's, and my niece Rachel his wife, lately Rachel Finlay; in trust for the eldest son or issue of said marriage; and in case such marriage should not take place, I leave and bequeath said estate to any child, giving preference to age, of said William and Rachel Trigg, that will marry a child of my brother James King's, or of sister Elizabeth's, wife to John Mitchell, and to their issue."

The testator died without issue. He survived his father, and had brothers and sisters of the whole and half blood, who survived him, and also a sister of the whole blood, Elizabeth, the wife of John Mitchell, who died before him. William and Rachel Trigg never had a daughter, but had four sons. James King, the father of William King, the devisee, had only one daughter, who intermarried with Alexander M'Call. Elizabeth, the wife of John Mitchell, had two daughters, both of whom are married, one to William Heiskill, the other to Abraham B. Trigg.

*By the Court.* We have found no case in which a general devise in words, importing a present interest, in a will making no other disposition of the property, on a condition which may be performed at any time, have been construed, from the mere circumstance that the estate is given on condition, to require that the condition must be performed before the estate can vest. There are many cases in which the contrary principle has been decided. The condition on which the devise to William King depended, is a condition subsequent. [377]

It is certainly well settled, that there are no technical appropriate words which always determine whether a devise be on a condition precedent or subsequent. The same words have been determined differently, and the question is always a question of intention. If the language of the particular clause, or of the whole will, shows that the act upon which the estate depends must be performed before the estate can vest, the condition of course is precedent; and unless it is performed, the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole will, the condition is subsequent. [374]

It is a general rule, that a devise in words of the present time, as "I give to A. my lands in B.," imports, if no contrary intent appears, an immediate interest, which vests in the devisee on the death of the testator. It is also a general

rule, that if an estate be given on a condition for the performance of which no time is limited, the devisee has his life for performance. The result of these two principles seems to be, that a devise to A., on condition that he shall marry B., if uncontrolled by other words, takes effect immediately, and the devisee performs the condition, if he marry B. at any time during his life. The condition is subsequent. [376]

The intent of the testator is the cardinal rule in the construction of wills; and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail; although in giving effect to it, some words should be rejected or so restrained in their application as to change their literal meaning in the particular instance. [377]

As the devise in the will to William King was on a condition subsequent, it may be construed so far as respects the time of taking possession, as if it had been unconditional. The condition opposes no obstacle to his immediate possession, if the intent of the testator shall require that construction. [378]

The introductory clause in the will states, " I, William King, have thought proper to make and ordain this to be my last will and testament, leaving and bequeathing my worldly estate in the manner following:" These words are entitled to considerable influence in a question of doubtful intent, in a case where the whole property is given, and the question arises between the heir and devisee respecting the interest devised. The words of the particular clause also carry the whole estate from the heir, but they fix the death of the testator's wife as the time when the devisee shall be entitled to possession. They are " in case of having no children. I then leave and bequeath all my real estate, at the death of my wife, to William King, son of brother James King." The whole estate is devised to William King, but the possession of that part of it which is given to the wife or others for life, is postponed until her death. [379]

*Quære.* Did William King take an estate which, in the events that have happened, enures to his own benefit; or is he, in the existing state of things, to be considered a trustee for the heirs of the testator? This question cannot be decided in this cause; it belongs to a court of chancery, and will be determined when the heirs shall bring a bill to enforce the execution of the trust. [383]

ERROR to the district court of the United States for the western district of Virginia.

This was an ejectment brought in the district court of the western district of Virginia, and the question involved in the suit was the construction to be given to the will of William King, deceased, formerly of Washington county in Virginia.

The cause was argued in the court below, on the following case agreed; and the judgment of that court being in favour of the defendant in error, the plaintiffs brought the case into this court.

The following is the case agreed:

We agree that William King departed this life on the 8th

day of October 1808, having first duly made and published his last will and testament, which was afterwards admitted to record in the county court of Washington county in Virginia, where he had resided, and is in the words and figures following:

"Meditating on the uncertainty of human life, I, William King, have thought proper to make and ordain this to be my last will and testament, leaving and bequeathing my worldly estate in the manner following, to wit:

"To my beloved wife Mary, in addition to her legal dower of all my estate, the dwelling house and other buildings on lot number ten in Abingdon, where I now reside, together with the garden, orchard, and that part of my fruit hill plantation south of the great road and lands adjacent to Abingdon, now rented to C. Finlay and Co., and at my father's decease, including those in his occupancy on the north side of the great road, for her natural life.

"I also will and declare, that in case my beloved wife Mary hath hereafter a child or children by me, that the said child or children is and are to be sole heirs of my whole estate, real and personal; excepting one-third part of specified legacies and appropriations hereinafter mentioned; which, in case of my having children, will reduce each legacy hereinafter mentioned to one-third part of the amount hereafter specified, and the disposition of the real estate, as hereafter mentioned in that case wholly void.

"In case of having no children, I then leave and bequeath all my real estate at the death of my wife to William King, son of brother James King, on condition of his marrying a daughter of William Trigg's and my niece Rachel his wife, lately Rachel Finlay, in trust for the eldest son or issue of said marriage; and in case such marriage should not take place, I leave and bequeath said estate to any child, giving preference to age, of said William and Rachel Trigg that will marry a child of my brother James King's or of sister Elizabeth's, wife to John Mitchell, and to their issue—and during the life time of my wife, it is my intention and request, that William Trigg, James King and her do carry on my business in copartnership, both saltworks and mer-

chandizing, each equal shares, and that in consideration of the use of my capital they pay out of the same the following legacies:

"To John Mitchell, on condition of his assisting and carrying on business with them at the usual salary as formerly, viz. $1,000 per year, for from two to five years, as they may wish his assistance. An additional sum of $10,000, payable five years after my decease, and to each of his children upon coming of age $1,000 more than the general legacy hereafter mentioned.

"To Connally Finlay a like sum of $10,000, payable in five years.

"To my nieces Elizabeth Finlay and Elizabeth Mitchell (being called for my grandmother with whom I was brought up) $10,000 in twelve months after marriage, provided they are then eighteen years of age; if not, at the age of eighteen; to each of my other nephews and nieces at the age of eighteen, that is children of my brother James, sisters Nancy and Elizabeth, $1,000 each—to each of the children of my half-brother Samuel and half-sister Hannah $300 each, as aforesaid; to my said sister Hannah, in two years after my decease $1,000; and to my said half-brother Samuel, in case of personal application to the manager at Saltville or to my executors in Abingdon, on the 1st day of January annually during his life $150; if not called for on said day to be void for that year, and receipt to be personally given.

"It is my wish and request that my wife, William Trigg, and James King, or any two of them that shall concur in carrying on the business, should either join all the young men that may reside with me and be assisting me in my decease, that are worthy; or furnish them with four or five thousand dollars worth of goods at a reasonable advance, on a credit of from three to five years, taking bonds with interest from one year after supply.

"In case my brother James should prefer continuing partnership with Charles S. Carson, (in place of closing the business of King, Carson and King, as soon as legal and convenient;) then my will is that William Trigg and my wife carry on the business, one-third of each for their own

[Finlay et al. *vs.* King's Lessee.]

account, and the remaining third to be equally divided between the children of my brother James and sisters Nancy and Elizabeth.

"To my father, Thomas King, I leave during his life the houses he now resides in and occupies at Fruit hill, together with that part of my land in said tract north of the great road that he chooses to farm, with what fruit he may want from the orchard; the spring house being intended for a wash house with the appurtenances, subject to the direction of my beloved wife Mary, as also the orchard, except as aforesaid. I also leave and bequeath to my father the sum of two hundred dollars per annum during his life, and if, accidentally, fire should destroy his Fincastle house and buildings, a further sum of two hundred dollars per annum while his income from there would cease.

"I also leave and bequeath to the Abingdon academy the sum of $10,000, payable to the trustees in the year 1816, or lands to that amount, to be vested in said academy with the interest or rents thereon for ever.

"Abingdon, Virginia, 3d of March 1806.

WILLIAM KING.

*Test.* Wm. D. Neelson,
     Jno. Doherty.

"I hereby appoint William Trigg of Abingdon and James King of Nashville executors of my last will and testament enclosed, written by my own hand and signed this 3d day of March 1806.

WILLIAM KING.

"The other wills of previous dates to said 3d of March 1806, being void.

WILLIAM KING."

We agree that William King, at the time of his death, was seised and possessed of seventy-six tracts of land in the said county of Washington, containing in the whole 19,473 acres of land, on one of which tracts is the saltworks, which have, since his death, been leased for years, at the annual rent of thirty thousand dollars; also of nineteen lots in the town of Abingdon in Washington county, nine of which pro-

duced an annual rent of six hundred and sixty dollars; also of fourteen tracts of land in the county of Wythe, containing 3,494½; also of eighteen tracts of land in the state of Tennessee, containing in the whole 10,880; also of shares in town lots in several of the towns in the said state of Tennessee. We also agree that the said William King survived his father in the will mentioned; that the said William King had brothers and sisters, to wit: James King, a brother of the whole blood; Nancy, a sister of the whole blood, the wife of Connally Finlay in the will mentioned; Samuel King, a brother of the half blood; Hannah, a sister of the half blood, the wife of John Allen; all of which brothers and sisters before named, survived the said William King; that another sister of the said William King, of the whole blood, died before him, and was named Elizabeth, the wife of John Mitchell, who is mentioned in the will.

We agree that William King, the lessor of the plaintiff, is the same William King, the son of James King, brother of the testator, mentioned by him in the will.

We further agree that William Trigg, in the will mentioned, departed this life on the 4th of August 1813, leaving Rachel Trigg, in the will mentioned, his widow, and four sons, the said Rachel having borne them to the said William Trigg, and not having borne any daughter to him the said William Trigg, at any time, which said sons are now living; that Mary, who was the wife of the said William King, is still living, aged forty-three years, and is now the wife of Francis Smith.

We further agree that William King, the lessor of the plaintiff, is married to Sarah Bekem; that James King had only one daughter, named Rachel Mary Eliza, who is now the wife of Alexander M'Call; and that Elizabeth, the wife of John Mitchell, had only two daughters, to wit: Elizabeth, who is now the wife of William Heiskill, and Polly, who is now the wife of Abraham B. Trigg.

We agree that William King the testator died seised and possessed of the house and lot in the declaration mentioned. We agree the lease entry and ouster in the declaration sup-

posed; and that the defendants are in possession of the house and lot in the declaration mentioned.

If upon this state of facts, the lessor of the plaintiff ought to recover at this time, we agree that judgment shall be entered for him; and that if the court shall be of opinion that he ought not to recover until after the death of Mary, the wife of Francis Smith, or that he ought not at any time to recover, judgment shall be entered in favour of the defendants. We also agree that the property in controversy is worth more than two thousand dollars.

The case was argued for the plaintiff in error, by Mr Sheffy; and by Mr Smyth and Mr Webster, for the defendant, at the last term; and was held under advisement by the court.

Mr Sheffy proposed to consider the case under two general aspects.

1. Has the defendant in error any title to the estate in question, regarding the devise as personal to himself.

2. Has he any title, should the devise be considered as a trust.

It is contended, that he has no title. That no interest whatever vested in him, because the condition presented by the testator has not been performed. He has not married a daughter of William Trigg and Rachel his wife.

This has a condition precedent, without the performance of which no right could vest in the devisee.

If the will is construed literally, the words employed by the testator are as strong as they can be. He gives the estate "*on condition*" that the devisee shall marry a person not in being, but expected to come into existence, the offspring of his wife's brother and his own niece. He anticipates that such a marriage may not take place. In this event he directs that his whole real estate shall go to such other persons, among certain collateral relations, as shall give effect to the object he had in view.

But it is admitted that the question, whether the condition is precedent or subsequent, does not depend on any form of expression. It depends on the testator's intention.

He has a right to bestow his estate on whom, and on what condition he pleases, so that he violates no established rule of law. To ascertain that intention, we must be governed by those rules of construction which have been established by a series of judicial decisions.

These decisions enable us to determine the general principles which give a character to conditions in contracts, and devises and bequests; either as conditions precedent or subsequent. So far as the present question is concerned, they establish, that where the testator requires the devisee to do an act which he regards as important to be accomplished; or where he prescribes a qualification which the devisee is to acquire; the performance of the act, and the attainment of the qualification, will be regarded as conditions precedent, unless a manifest intention to the contrary is apparent.

In the case before the court, the testator had no children. He had a strong desire to effect a union between the family of his wife and his own. In the disposition of his real estate, he contemplated the attainment of that object as paramount to all personal considerations. There is no reason to believe that his nephew William King was the object of his peculiar attachment. So far from it, he withholds from him (though he bore his own name) even the smallest bounty, unless he should become instrumental in the accomplishment of his primary purpose. Looking to his marriage with a daughter of William Trigg and Rachel his wife, as an event which might never happen; he endeavoured to stimulate *others*, *standing in the same relation to him*, to effect the desired union of the two families. He did not dedicate his estate to gratify a particular personal attachment, or to promote individual interests; but to bring about an *event* which he strongly desired.

The case of Bertie *vs.* Falkland, 2 Vernon, 333, strongly supports the construction contended for by the plaintiff in error. There the testator devised an estate to Elizabeth Willoughby, an infant of ten years old " in case she married lord Guilford within three years from his death." The marriage did not take place, though there was no fault on the part of the devisee. The marriage was held to be a condition

precedent. Lord chief justice Treby, in delivering the opinion of the court, says, " that the defendant Elizabeth's being willing and consenting, or endeavouring to bring about the marriage, could not be of any avail or moment in this case ; for that the will was formed not on the endeavours or agreement of the parties to marry, *but on the event*. In Acherley vs. Vernon, P. W. Rep. 783, the case in Vernon is referred to by lord chief justice Wills, and considered by him as settling the law. The case before him involved the same principle. The question was whether the performance of an act required by the testator from his sister, was a condition precedent on which her title to a legacy depended, or whether the legacy vested at her brother's death. It was decided that the *act* being an object with the testator, and desired by him, was the consideration of the legacy, and therefore a condition precedent.

A great variety of authorities might be cited, all tending to establishing the same principle. It is sufficient to refer the court to the following : Creagh vs. Wilson, 2 Vernon, 572. Elton vs. Elton, 1 Ves. Sen. 4. Gillet vs. Wray, 1 P. Williams, 284. Graydon vs. Graydon, 2 Atkins, 16. Reynish vs. Martin, 3 Atkins, 333. Grascott vs. Warren, 12 Modern, 128. Harvey & Wife vs. Aston, 1 Atkins, 361. Randal vs. Payne, 1 Bron. Cha. Rep. 55, and 2 Atkins, 151. 2 Powell on Devises, 252. 2 Cruise, 20.

The intention of the testator, that nothing should vest until the condition should be performed, is further manifest, as the will postpones all right of the devisee of the real estate until the death of his wife. She was at the date of the will not more than twenty-five years of age, and he reasonably supposed that a marriage such as he wished to effect, would take place before her death. In the mean time, the legal estate descended to the heirs at law, who could hold it until the event contemplated by the testator should happen. Fearne on Remainder, 513, 516. 2 Fonb. Eq. 93.

It will probably be said that though the intent of the devisee is postponed in terms until the death of the testator's wife, yet that it ought to be construed into an immediate interest by implication. Such was the opinion of the court

[Finlay et al. *vs.* King's Lessee.]

below. Courts have sometimes allowed implications when they are very apparent, in order to give effect to the intention of the testator. But they must be necessary, not probable implications; for the title of the heir at law being plain and obvious, no words in a will ought to be construed to defeat it, if they can have any other signification. Cruise, title Devise, 205.

But the devise over shows in the strongest light that the testator did not intend to part with the estate, unless the event which he sought to bring about should happen. He directs that " in case such marriage should not take place, then I leave and bequeath the said estate to any child of the said William and Rachel Trigg, that will marry a child of brother James King or of sister Elizabeth." It is immaterial whether the devise could take effect according to law, or not; the testator thought in could, and intended that the estate should pass to others in the event mentioned in his will. According to the pretensions of the defendant, it never could pass, though the event mentioned in the clause referred to should happen; and though it should be decided that the devise was within the legal limitation. For the ground on which he rests his claim (as is understood) is, that on the death of the testator he took a vested contingent fee, which would become absolute on the marriage with a daughter of William Trigg and Rachel his wife; that as there never was any such person, he could not perform the condition, and is therefore absolved from it, and holds the estate absolutely. If then a son of William Trigg and Rachel his wife, had intermarried with a daughter of James King or Elizabeth Mitchell, the defendant would have kept the estate against the express intention of the testator. This cannot be law, because it is contrary to all reason. It would be sporting with the right which the law guarantees to the citizen to dispose of his property to whom and on what condition he pleases, so that he violates no established rule of public policy.

But it is contended, that, if the estate vested in the defendant at the death of the testator, that all right in him became extinguished on the death of William Trigg. That event placed it beyond all doubt; that such a marriage as the

testator wished to promote, could not take place. As to the defendant, therefore, his title ceased with the possibility of his becoming instrumental in uniting the two families.

But it will be contended, that, if the marriage of William King with a daughter of William and Rachel Trigg is a condition subsequent, then the estate is discharged from the condition; it being impossible to perform it; the correctness of the conclusion is not admitted.

If the testator's primary legal object was the union of the two families, and if he devised the estate to the defendant, on condition that he should become instrumental in effecting that object; it is immaterial whether the condition is precedent or subsequent, or whether the failure to accomplish the purpose desired, is owing to one cause or another. The question still recurs, did the testator intend that his nephew should have his whole estate, whether the marriage prescribed should take place or not, provided the failure was not attributable to him? Suppose the testator had declared that on his death his nephew should have his whole estate, in fee, on condition that he married a daughter of William and Rachel Trigg; but that whenever it was ascertained that such marriage could not take place, from any cause whatever, that all his right should cease, and that the estate should go to such person as is actually designated in the will. Could it be seriously argued that the impossibility of such a marriage, on the part of the defendant, would render the estate absolute in him, against the express intention of the testator? It is believed it could not: and yet this is the very case before the court, if the defendant had a vested interest at the death of the testator.

The argument that the defendant acquired an absolute estate, whenever it became impossible to perform the condition of the devise on his part, has no other support except the idea that the devise over was intended as a penalty on him for not doing what the testator desired, and that there can be no penalty when there is no fault. This is a perversion of the obvious meaning of the will. The testator was fully acquainted with all the circumstances; he knew that William and Rachel Trigg had no daughter, and consequently foresaw that it was

possible that such a marriage *could* not take place.  In this state of things, if he had intended that his nephew should have the estate, unless he was guilty of a fault in disobeying his wishes, would he not have restricted the devise even to the occurrence of such fault ?  Would he not have indicated that it was resistance or indifference to his views, that should take the estate from the party in fault, and place it at the disposal of others.   The testator never thought of any such thing.   He wished to *effect an object* dear to his heart.   If that object was not effected, he cared not for the cause.   Individual personal attachment had no share in the purpose. The *act* which united the two families was the meritorious and only consideration with him.

In this view of the subject, it is not material whether the condition *was*, at the date of the will, or afterwards *became* impossible.  . But if it was, it could be easily shown that this condition falls within neither of the classes mentioned in the books where performance is excused.  It was not a condition impossible at the date of the will ; on the contrary, it was *quite probable* that William Trigg and Rachel his wife, who were both very young, would have a daughter to whom the defendant could be united in matrimony.   An impossible condition, which is considered as void, is of this character ; that at the time it is required to be performed, nothing short of a miracle could accomplish its performance. It is laid down in 5 Viner's Abridgment, 111, that if the condition be that a person shall go to Rome in a day, it is impossible ; but if the condition be that the Pope shall be at Westminster to-morrow, this is not an impossible condition, though the event is highly improbable.  If a person should be required by a testator to qualify himself for and take holy orders by the time he should arrive at the age of twenty-five years, on the condition and consideration of a legacy, and that the interest should be paid to him in the mean time, (which would make it a vested legacy), would it be an excuse for the legatee to allege, that his intellect was unequal to the attainment of the necessary learning and the performance of the ecclesiastical functions, and that therefore it was an impossible condition ?   Most assuredly not.

This is not a condition which *became* impossible after the death of the testator, the non-performance of which will be excused. Those conditions belong to cases where all the means to accomplish the testator's purpose are in his view and in being; but when subsequent events change the existing state of things so essentially as to render the performance impossible, for instance, if a devise be made on condition that the devisee consent to marry a particular person, and that person dies, the performance is rendered impossible by the happening of an event subsequently, which the testator never contemplated; and where the estate had previously vested it, will become absolute by the death of such person.

The leading case for the defendant, and which will be doubtless relied upon, is the case of Thomas *vs.* Howell, 4 Mod. Rep. 66. But that case is essentially different from the one before this court. There the testator devised to his daughter Jane an estate called Lawhorn, on condition that 'she, at or before the age of twenty-one years, " *do consent*" to marry Theophilus Thomas, who was the testator's nephew. Then he devised other estates to his two remaining daughters, and then follows this proviso : " And my will is, that in case my daughter Jane *shall refuse* to consent to marry my nephew Theophilus Thomas, at or before she shall be of the age of twenty-one years, or in the mean time shall marry another person, the devise shall be void." He proceeds to devise Lawhorn to his other daughters in succession, on the same condition ; and then adds, " but in case neither of my said daughters marry my said nephew, then the estate given them in Lawhorn shall be void ;" and devises the estate over to trustees.

Theophilus Thomas died at the age of twelve years ; Jane never refused to marry him, and after his death, at the age of seventeen, married another person. She had entered on Lawhorn on the death of her father, and the question was, whether the estate was divested, the contemplated marriage never having taken effect.

Three judges to one were of opinion, that under the first proviso to divest the estate, Jane must have " *refused to con-*

*sent*" to marry Theophilus Thomas; that what followed in the subsequent clause had reference to the same proviso, and ought not to be taken in a larger sense than the proviso itself; and upon this ground decided that the estate of Jane was absolute.

This case, instead of being an authority for the defendant, bears strongly against his pretensions. It shows that the court decided the case on the proviso, which made the *re-fusal* of Jane to *" consent to marry"* Theophilus Thomas the *basis* on which the devise over should take effect. And then arises an irresistible implication from the opinion of the court, that if the case had rested on the last clause, the estate would have gone to the trustees.

To establish that, in the case now before the court, the defendant acquired a title which can be defeated only by his voluntary default, would overthrow the principle well established in many cases of conditional devises and limitations. For example: A testator devises to A. an estate for the term of thirty years, and if at the end of the term he has a child living, to A. in fee; but if he should have no child living, then to B. It might not be the fault of A. that he had no child *living* at the end of the term, and yet it has never been questioned that B. would take the estate.

Again: suppose a case, which is very common. A testator devises an estate to A. and his heirs; but if A. shall die without issue living at his death, then to B. and his heirs; would the heir at law of A. be permitted to keep the estate on the ground that his ancestor had committed no fault, and that therefore the estate became absolute? Such a defence has never been offered.

It is contended, in the second place, that the defendant has no title if we regard the devise as a trust.

There is nothing in this case which authorizes the belief, that the testator had any *personal* predilection for the defendant. He mentions him as the son of his brother James King; but there is nothing peculiar in that, as he likewise refers, and with the same view, to all the other children of James King, and those of his sister Elizabeth. If we confine ourselves to the words employed, all idea of any beneficial in-

terest being intended for William King, is excluded. He is to take the estate on condition that a certain marriage shall take effect; but it is " in trust for the eldest son or issue of the said marriage." If we regard the union of the two families as the great object which the testator sought to bring about; then those in whom should be united the blood of both, must have been the objects of his peculiar favour.

The testator probably thought that a person not in being could not take the estate, unless it was through the instrumentality of a trustee. He regarded his nephew merely as a conduit, through whom his bounty should flow to those whom he considered as pre-eminent; because they would inherit the blood of both families.

If the devise is to be considered as a trust, then the question arises whether any trust interest vested on the death of the testator, or whether it was to arise when the marriage took effect? No immediate interest is expressly devised; on the contrary, the words used are, "at the death of my wife." There is no reason to support an immediate interest by implication, because there was no necessity for it; as the beneficial interest could not vest, until those who were to enjoy it would come into existence. Besides, the statute of uses makes a devise to A. to the use of B. the same as a devise to B. so that this devise is in point of law to " the eldest son or issue of the marriage." The doctrine is well established that in such a case the legal title descends to the heir at law, and remains until the birth of the issue, when it vests in him. In this case, there being no possibility of any such issue, the title in the heirs at law is no longer in trust for the purposes of the will, but is absolute in themselves.

But admitting, for argument sake, that the trust vested on the death of the testator; it is urged, that whenever the possibility of a marriage between the testator's nephew and a daughter of William and Rachel Trigg became extinct, the trust terminated.

The purpose of such a trust is, that the trustee holds the estate for the *sole and exclusive* benefit of those who are to be beneficially interested; but if no such person shall be brought into existence, then the testator has not disposed of

[Finlay et al. vs. King's Lessee.]

the estate : because he has never contemplated such a state of facts. No person ever doubted, that if the testator had given the estate to the eldest son of William King, when he should be born, and William King should never have a son, that the estate would go to the heirs at law of the testator. Whatever manifestations might appear to show that the testator did not intend to die intestate, such manifestations never have any other effect than to aid a court where the *donation* of an estate is in question, or when it is doubtful what property a general description includes. But to give to a naked trustee the absolute title to an estate, merely because the person for whom the beneficial interest was intended has not been born, and because the testator did not intend to die intestate, is not supported by reason or authority; on the contrary, it is considered, that the title of the heir at law will always be supported, unless the devisee can show a clear intention against him.

The doctrine of resulting trusts is peculiarly applicable to this part of the case. It is well settled, that wherever the purposes of a trust have been satisfied, or cannot be executed, that the estate reverts to the heir at law. 3 P. Williams, 20, 252. 1 Saunders on Uses and Trusts, 164. 1 Brown's Ch. Cases, 508, 60, note. 4 Brown's Ch. Cases, 409.

Mr Smyth and Mr Webster, for the defendant in error.

In this case three questions are presented for consideration.

1. Whether is the condition on which the real estate is given to William King, precedent or subsequent ?

2. Supposing it to be subsequent, when does the estate vest in possession in William King?

3. What is the nature of the estate when vested?

1. We admit, that if a condition precedent becomes impossible, the estate will never arise; and equity will not relieve: But we contend that if a condition subsequent becomes impossible, the estate will not be defeated, or forfeited. 2 Bl. Com. 156, 157. 7 Co. Litt. 206, a, b. 2 Vern. 339. Powel on Contracts, 266. 2 Atk. 18. 2 P. Williams, 626, 627. Powel on Devises, 262.

Vol. III.—2 V

·[Finlay et al. *vs.* King's Lessee.]

The same words make a condition precedent or subsequent, according to the intent of the person who creates it. Willes, 156.　2 Bos. & Pul. 295.　1 Durnf. and East, 645. 2 Caines, 352.　Powel on Devises, 183.　Cases T. T. 166.

Whether the condition is precedent or subsequent, depends on the order of time in which the intent of the testator requires the performance.　Willes, 157.　2 Bos. & Pul. 297. Justice Heath said, "The question always is, whether the thing is to happen before or after the estate is to vest ? If before, the condition is precedent; if after, it is subsequent."

In the case before the court, the intention of the testator is clear, that William King should have the whole estate on the death of Mrs King.　Mrs King might have died within a year after the death of the testator; yet the daughter of William Trigg and Rachel his wife, whom William King was required to marry, might have been born twenty years afterwards, and the marriage might have taken place at the end of forty years more.　It could not have happened in less than thirteen years, and might have happened more than sixty years after the death of the testator.　Clearly, the testator intended, that under those circumstances, the marriage might be subsequent to the vesting of the estate.

Unless the intent of the testator required that the devisee should, before the death of Mrs King, marry a female who was unborn at the time he made his will, and at the time of his death, this cannot be a condition precedent.　Why should it have made any difference to the testator, whether the marriage happened before or after the death of Mrs King?

A condition is precedent or subsequent, as the act is to be done before or after the estate vests.　This act, the marriage, was not necessarily to be done before the whole estate should vest in possession.　A condition which might be complied with sixty years after the time prescribed for vesting the whole estate in possession, must be a subsequent condition.　If the act may as well be done after as before the vesting of the estate, the condition is subsequent.　All conditions in wills are either precedent or subsequent.　A condition which may be performed either before or after, is not a precedent condition, and therefore is a condition subsequent.

The testator says, " I then leave all my real estate, at the death of my wife, to William King, son of brother James King, on condition of his marrying," &c. The whole estate must vest in possession at the death of Mrs King. But William King, who was three years old when the will was made, had his whole life to perform the condition. A marriage after the death of Mrs King would be a fulfilment of the condition, as well as a marriage before her death. Therefore it is a condition subsequent; and being impossible, the estate will not be defeated or forfeited. 2 Atk. 18. Cases T. T. 164, 166. 2 P. Wms, 626. Pow. Dev. 257, 258. 1 Salk. 170. 4 Mod. 68. Rice *vs.* Aislabie, 3 Madd. 256, 260.

There are some cases reported which, at first view, may seem adverse to us; but which, on examination, will be found to differ essentially from our case. In the case of Bertie *vs.* Falkland(*a*), the condition was adjudged to be precedent. There was a devise to trustees for thee years, and if there was a marriage in three years the estate was to vest. There the marriage was obviously a condition precedent; for it was to take effect in three years, and the estate, being in trustees, was not to vest until the termination of the three years. So where there was a settlement in trust, that if A. marries B. after the age of sixteen, and they have issue male, the estate shall be to A. and B. for themselves; the condition is precedent : for the estate is expressly given to trustees, until the marriage and the birth of issue. 2 Vern. 333. Com. Dig. Condition, B. 1, pl. 10.

2. When does the estate vest in possession of William King, the lessor of the defendant in error ?

We contend, that all the estate of William King, the testator, is devised by the will. If all is devised by the will, the right of possession of the real estate, from the death of the testator to the death of Mrs King, is devised. It is not devised to Mrs King by implication. The real estate is devised to William King ; therefore he takes the right of pos-

(*a*) A note in a late edition of Freeman's Reports, p 36, says, this decision was reversed in the house of lords.

session during the life of Mrs King, unless it is devised to some other person.

We contend that, as to all the lands of William King the testator; except the dower of Mrs King, the saltworks, and those lands devised to Mrs King, to Thomas King, and to the Academy; the estate passed to William King the devisee, immediately on the testator's death.

Did the testator intend his hundred tracts of land, and thirty or forty town lots, should descend to his heir until the death of his wife? We insist that the testator did not intend that his lands should descend to his heir for a moment. The heir shall not take, where, from the will, the intention of the testator that he shall not take appears. The limitation over, although supposed not to be a good one, shows the determination of the testator to defeat the claim of his heir. 1 Dall. 227.

If the estate does not pass immediately to William King, there must be either a life estate by implication, or a descent to the heir, during the life time of Mrs King. As Mrs King has dower devised to her in the whole of the lands, and a life estate in a part of them, she cannot also take a life estate in the residue by implication. She cannot claim a life estate in parts, and also in the whole. Had William King, the devisee, been the heir, and had there been no devise to Mrs King, this devise to him, "at the death of my wife," would have given to her an estate for life, by implication. 4 Bac. Ab. 288. 2 Vern. 572, 723.

The father of the testator was, at the time of making his will, his heir presumptive. To him is devised, for life, the use of a cottage, and perhaps twenty acres of land, as many apples from the orchard as he could eat, and an annuity of $200. After his death, this piece of land was to go to Mrs King for her life. This devise shows that the defendant did not intend that his presumptive heir should take one hundred plantations, during the life of Mrs King. The testator manifestly expected his wife to outlive his father, and has spoken as if that was beyond a doubt.

The testator intended to dispose of the whole of his real

estate. He speaks of " the disposition of the real estate ;" and uses the expressions, " my worldly estate," " all my estate," " my whole estate," " all my real estate." Did the testator intend to die intestate as to his one hundred plantations, and thirty or forty lots, during the life of Mrs King? He did not intend to die intestate as to any part of his estate. He makes his will, " leaving and bequeathing my worldly estate, in the manner following." If after the use of such words, a part of the testator's property was clearly omitted, it is admitted that such part would not pass by the will; but if property is given by the will, these words will signify that all the testator's interest therein is given. Ca. T. T. 157, 160, 161. 3 P. Wms, 395, 297, 298. 1 Wils. 333. 1 Vesey, 226. 1 Wash. 97, 107. 2 Binney, 17, 33. 1 Call, 132. 1 Munf. 543, 545.

In the case of Ibbetson *vs.* Beckwith, lord chancellor Talbot said, " I am of opinion that these words (worldly estate) prove him (the testator) to have had his whole estate in his view, at that time. Indeed he might have made but a partial disposition ; but if the will be general, and that taking his words in one sense will make the will to be a complete disposition of the whole, whereas the taking them in another will create a chasm, they shall be taken in that sense which is most likely to be agreeable to his intent of disposing of his whole estate."

" All my real estate," is descriptive of the duration as well as of the extent of the estate. Therefore it includes the right to possession, before the death of Mrs King; as well as after, in those lands not devised to her, or to others during her life. Salk. 236. 2 P. Wms, 524. 1 Vesey, 228.

" Leaving and bequeathing my worldly estate," means the same thing as if the testator had said. " I intend to give by this will every thing I have in the world." 3 Wils. 143. The testator having said this, devised the most valuable portion of his estate to his wife, and to others, for her life. Then he devised all his real estate to his nephew, at the death of his wife. To make this agree with his declaration, that he intended to give by the will all he had in the world, this devise must be so construed, that the devisee will take immediately, on the testator's decease, that part of the estate

which has not been devised to another, and that he shall take, on the death of Mrs King, that portion of the estate which had been devised to her, and to others, for her life. He shall take it *all* then, because he cannot take it all sooner.

Taken in connection with the introductory words, " all my estate at the death of my wife," it is a devise of the whole duration of the estate after the death of the testator ; but it may by implication give it to Mrs King, during her life. Now if it has been shown that the estate is not devised to Mrs King by implication, as it is devised, it must go to William King, the specific devisee.

" All my estate, at the death of my wife," carries the whole, as well before as after her death : but if there was no devise to the wife, those words would divide the duration, the wife taking during her life, and the specific devisee afterwards. When the wife cannot take, these words must be otherwise satisfied. And if the specific devisee can take only a part immediately, and the residue at the death of the wife, so that then he will take all, they are satisfied.

The intention of the testator is the polar star in construing wills. 4 Mod. 68. 1 Wash. 102. 1 Munf. 537, 547. 2 S. C. Rep. 32. The court will execute the intention of the testator, as far as they can. They will transpose the words of a will to effectuate the intent of the testator. Let the word " all" be transposed, and the clause made to read, " I then leave and bequeath my real estate, all, at the death of my wife, to William King." 1 Call, 132.

Nothing could be further from the intention of the testator than the distribution of his estate, either to his brothers and sisters, or to his nephews and nieces. He intended that all his real estate should vest in one man, his eldest nephew, of his own name, the son of his only brother, of the full blood, and in the eldest son or issue of that nephew. The distribution would include Samuel King, or his children, to which half brother the testator grudgingly gave an annuity of $150.

The question, when shall the estate vest in possession, is to be decided from the intention of the testator, as gather-

ed from the whole will. 1 Doug. 342. The testator intended that his heir or heirs should not have his plantations. To take the estate from the heir, during the life of Mrs King, requires a necessary implication; and such an implication is here. 4 Bac. Abr. 282. 2 Vent. 571. 1 Dall. 227. The devise to Thomas King, the presumptive heir at the time of making the will, of a house and a few acres of land for life, remainder to Mrs King during her life, is inconsistent with his taking the large real estate of William King, and a necessary implication that he is not to take it, during Mrs King's life.

The counsel on the other side has said in argument, that Thomas King, the father of the testator, was an alien. That is going out of the record, by which it appears that the testator considered his father capable to take a freehold, and that he was in fact a proprietor of real estate. It has never been shown that Thomas King was an alien; and, from information, it is probable that he never was an alien in the United States.

Either the heir or the devisee must take; for the testator cannot put the freehold in abeyance. 1 Doug. 231.

If the condition of marriage is subsequent, which we deem proven, there is no reason for postponing the commencement of the estate of William King the devisee, in possession, of the real estate not devised for the life of Mrs King. If the estate is given on a condition subsequent, why may not the estate, except what is devised to Mrs King and others, vest in possession immediately on the testator's death? To what end suspend it when it is not to wait for the performance of the condition?

These words, "at the death of my wife," were inserted in consideration of the devise of e use of the saltworks during her life, the devise of dower, and the devise of certain portions of the real estate, during her life. These words have their effect; because a large part of the estate, far the most valuable, cannot, consistently with other clauses in the will, come to the possession of the devisee, William King, until Mrs King's death.

Suppose that a testator had made his will thus: to A. my

father, who is seventy years old, during his life, one-three-hundredth part of my real estate; to B. my wife, who is twenty years old, during her life, one half of my real estate, including the part devised to my father, after his death; to C. my nephew, the whole of my real estate at the death of my wife; the testator dies, the father, who is heir, surviving. Would a court give to A. the father, and his heirs, half the real estate, during the life of B. the widow, when the testator clearly intended and expressed that A. should have only one three-hundredth part for his own life? Certainly they would not. In such a case, the words, "at the death of my wife," would be applicable to the moiety devised to her for life. The death of the father before the testator, in this case, cannot change the meaning of the will.

All the real estate could not vest in possession of William King, the devisee, at the death of the testator: but all is devised to him: therefore the words, "at the death of my wife," are used; as then, and not till then, all might vest in possession.

Should the testator be regarded as having died intestate, as to his lands not devised to Mrs King, until her decease, they would have descended to his brothers and sisters, his father having died before him; and it is apparent that he did not intend that those brothers and sisters should take his real estate, during the life of Mrs King.

To James King he gives the use of one third part of the saltworks during the life of Mrs King, say $10,000 annually; to Samuel King, an annuity of $150; and to Hannah Allen, a legacy of $1000; thus giving to James King sixty-six times as much as to Samuel King, and more than two hundred times as much as to Hannah Allen: but if his plantations are distributed during the life of Mrs King, then Samuel King and Hannah Allen will have a part equal to that of James King, although they stood so unequally in the affections of the testator as objects of his bounty. It seems manifest that he did not intend that his great estate in lands should pass to, and be distributed among his brothers and sisters, during the life of Mrs King.

Unless the will is construed to give to William King, im-

[Finlay et al. *vs.* King's Lessee.]

mediately, the lands, other than those devised during Mrs King's life, the marriage intended might have taken place within fifteen years from the testator's death, and the issue of the favourite nephew, the desired family of Kings, might have been without a maintenance for the period of forty years; as Mrs King, who was twenty-four years old at the death of the testator, might have so long lived; while one hundred plantations and thirty or forty town lots would be in the possession of the heirs. This cannot have been the intention of the testator. 2 P. Williams, 627.

It may be proper to notice the very imperfect manner in which the testator expressed himself in this will, for want of legal knowledge. He devises the use of his capital; that has been construed to be a bequest of his capital. He requests that his executors and his wife will carry on his salt-works business in copartnership; that has been construed a devise of the saltworks. He devises $10,000 to two of his nieces; that has been construed a devise of $10,000 to each of them. To give effect to the intention of this testator, requires the liberal aid of the courts.

3. What is the nature of the estate of William King, the devisee, when vested?

If the condition is subsequent, the devisee has his life time to perform it, before he forfeits; even where performance is impossible. And if it becomes impossible, without his default, or never becomes possible, we contend that he will never forfeit. Had Mrs King died within a year after the death of the testator, the whole real estate would have vested in William King, in possession, although the daughter of William Trigg was unborn. The devisee would have his life time to perform the condition, even if William Trigg had ten daughters. Even if William King had stood by and seen those ten daughters all married, he would have time to perform; for he might marry one of them when a widow. Should he even marry another woman, he would still have time to perform; for he might when a widower perform the condition.

An impossible condition is the same as none. It is void, and there can be no breach. It is impossible that there

Vol. III.—2 W

should be such a marriage as the testator desired : therefore the devisee takes and holds as if there was marriage ; or rather, as if there was no condition, for the condition is void. The counsel on the other side contended that this was not an impossible condition ; for that it was probable the marriage might be had. The law says nothing of probable conditions. And it is asked, what is more impossible than to marry a person who never came, and never can come, into existence ?

If it is impossible to do a thing, no one can be under any obligation to do it. The condition was not possible when made, and never became possible ; and being subsequent, the estate is absolute. If the condition had been possible when the will was made, and afterwards became impossible by the act of God, without the default of the devisee, the estate would also be absolute. 2 P. Wms, 628. Com. Dig. Condition, D. 1, pl. 4. Pow. Con. 265.

Had a daughter been born to William Trigg, and had the marriage taken place, William King would have taken the profits, without having issue. There is no devise over, in the event of not having issue. The application of the profits to the use of such issue, would have been another impossible condition ; therefore he would keep the profits, and hold the legal estate discharged from the trust, the performance of which was impossible.

If the condition is subsequent and impossible, and the application of the profits, as directed, also impossible ; then the estate must be held discharged of the condition, and exonerated from a trust which cannot be performed. When the impossible condition is stricken out of the will, the trust to arise thereon goes out with it. The devise is to William King, subject to an impossible condition, an impossible executory trust, and a void limitation ; yet the legal estate remains in him. He is devisee in fee, on a void condition. The whole condition being void, every part of it is void.

We contend that William King, the devisee, takes beneficially, and keeps the profits. The devise is unquestionably a beneficial one ; for, in one event, that of marriage and having no issue, the estate is not devised over, and the profits

would belong to the devisee. Why should the profits be taken from the devisee? There are none who seem better entitled under the will. This is the only devise made by the testator to his favourite nephew, the eldest son of his only brother of the full blood, and the heir of his name. The testator was obviously attached to the principle of primogeniture, and paid great regard to names. To two of his nieces he gave $10,000 each, because they were named after his grandmother. Did he mean to give nothing to the nephew who bore his own name? He cannot have intended that his favourite nephew should be a mere trustee for his, the testator's heirs; in any event, entitled only to commissions on his receipts. Did he mean to devise to his favourite nephew trouble, and nothing more, on condition that he would marry the daughter of his favourite brother-in-law and niece?

A consideration was required of him: marriage. He is therefore entitled to the estate on the condition imposed, if performance shall be possible, and on no other condition; to take the profits for his children if such there be, and if not, for his own use. This consideration shows that, had the marriage taken effect, the devisee could not have been regarded as a mere trustee. Here is also the consideration of nearness of blood, which is often decisive of the question, whether a devisee takes beneficially, or as a mere trustee. See Loyd *vs.* Spillet, 2 Atk. 150, and Hobart *vs.* The Countess of Suffolk, 2 Vern. 645.

Will the estate determine on the death of William King the devisee, in consequence of his not performing the condition?

The words of the devise convey a fee simple; and he takes a fee simple, if he takes at all. What would be the construction of the will, should the void clause be stricken out? That it conveys an absolute estate in fee simple. Strike out the void clause, and the devise will read, "In case of having no children, I then leave and bequeath all my real estate, at the death of my wife, to William King, son of brother James King."

The failure of issue is not made a condition on which the

estate shall pass over. Consequently the devisee would take the estate and profits, after marriage, without issue. And we contend, that as soon as the estate vests in possession, he will take the profits without marriage, the condition being subsequent and impossible.. It is a devise to him in fee simple; and there are none to whom the profits are directed to be paid. A beneficial devise to him was intended, and there is no implication in favour of the heirs.

The important question is, " does the legal estate pass by the devise ?" If so, there is no trust for the heirs. The heir is entitled to the real estate not given to another : but here all the real estate is given from the heir. The estate is devised over, on failure to perform the condition. A question may yet arise, whether that devise over is good. Whether that devise is good or not, we contend that we have a right to recover. The heir cannot prevail, unless it is decided that the devise to William King, and the devise over, are both void:

There is a class of cases which have some analogy to that before the court; although they are essentially different from it. The cases referred to are those wherein a question has arisen between the heir and executor, the heir and next of kin, or the heir and devisee ; whether there is, or is not a resulting trust for the heir.

Where lands are devised to be sold for payment of debts and legacies, or in trust for the payment of debts and legacies, and the devisee or executor is a stranger, or has a legacy, and there is a residue; there is a resulting trust for the heir, especially if there is nothing given to him by the will. In this case the devisee is no stranger, he has no legacy, and there is no residue. 1 P. Wms, 309. 2 Atk. 150. 2 Vern. 644. 1 Meriv. 301.

But if it appears from the will that a benefit was designed for the executor or devisee, being a relation, and especially where the heir has some other benefit from the will ; there will be no resulting trust for the heir, although there is a residue. In this case the devisee is a relation : a benefit is intended him, and the heirs are provided for by the will. See Rodgers *vs.* Rodgers, 3 P. Wms, 193. North *vs.*

Crompton, 1 Cha. Ca. 196. Coningham *vs.* Melish, 1 Eq. Ca. Abr. 273, or Prec. Cha. 31. Malabar *vs.* Malabar, Ca. T. T. 78, in which case the devise was in trust, yet there was no resulting trust for the heir. Hill *vs.* The Bishop of London, 1 Atk. 618, 619, 620. Smith *vs.* King, 16 East, 282. Kennell *vs.* Abbot, 4 Ves. 6.

The rule, that an heir, taking a benefit by the will, cannot have a resulting trust, would exclude the heirs of William King the testator; as not only the presumptive heir at the time of making the will, but also those who were heirs at the time of his decease; every one of them take benefits by the will.

Wherever there is a consideration, there can be no resulting trust. 7 Bac. Abr. 143. Here marriage was required; and the devisee might have waited twenty years to perform the condition. Had a daughter been born to William Trigg, when William King was twenty-five years of age, and had he waited for her fifteen years, and she had died, surely his claim would have been strong; yet it would have been no better than it now is; because the words and meaning of the will would have been the same. If in that case the claim of the devisee would have been good, it is good in this case.

This case is not like that of a devise upon trust to pay debts and legacies (1 Meriv. 301), for in such a case, there may be a residue; but here the whole estate is devised away, upon condition, and, upon failure of that condition, devised over. Thus no residue is left for the heir to claim. The trust is of equal extent in point of duration with the legal estate. No part of the trust remains undisposed of. It would be difficult to express more clearly an intention that the heir shall not take. The estate is devised in fee on condition, and, on failure to perform that condition, devised over.

But if the plaintiff is a mere trustee, he has a right to recover in ejectment. 2 Doug. 722. 5 East, 138. 1 Schoales & Lefroy, 67.

A mere trustee may recover against him who claims the

[Finlay et al. *vs.* King's Lessee.]

benefit of the trust, where the right is not clear. 4 Bos. & Pull. 171.

It is hoped that the opinion of the court will elucidate and ascertain the rights of all parties claiming the real estate of the testator; as they know not certainly to what they are entitled.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

This is a writ of error brought to a judgment rendered in an ejectment by the court of the United States, for the western district of Virginia. The judgment was pronounced on a case agreed. Three questions have been made at the bar:

1. Is the condition on which the testator has devised his real estate in trust to William King, a condition precedent or subsequent?

2. If subsequent, at what time does the estate vest in possession?

3. What is the nature of the estate, when vested?

1. Is the condition precedent or subsequent?

The words of the will are, "In case of having no children, I then leave and bequeath all my real estate at the death of my wife to William King, son of brother James King, on condition of his marrying a daughter of William Trigg and my niece Rachel his wife, lately Rachel Finlay, in trust for the eldest son or issue of said marriage, and in case such marriage should not take place, I leave and bequeath said estate to any child, giving preference to age, of William and Rachel Trigg that will marry a child of my brother James King's, or of sister Elizabeth's, wife of John Mitchel, and to their issue."

It was admitted in argument, and is certainly well settled(*a*), that there are no technical appropriate words which always determine whether a devise be on a condition precedent or subsequent. The same words have been determined differently; and the question is always a question of intention. If the language of the particular clause, or of the whole will,

(*a*) Willis, 156. 2 Bos. & Pul. 295. 1 D. & E. 645.

shows that the act on which the state depends, must be performed before the estate can vest; the condition is of course precedent; and unless it be performed, the devisee can take nothing. If, on the contrary, the act does not necessarily precede the vesting of the estate, but may accompany or follow it, if this is to be collected from the whole will, the condition is subsequent.

In the case under consideration, the testator does not in terms give his real estate to William King on his marrying the daughter of William and Rachel Trigg, but at the death of his, the testator's wife, on condition of his marrying a daughter of William and Rachel Trigg. Whatever doubt may be entertained respecting the lands not given to the wife for life, the testator has expressed clearly his intention, that the lands encumbered with his wife's life estate should come to the possession of William King at her death. He gives the estate at that time, without requiring that the condition annexed to it should be previously performed. The estate then vests in possession, whether the condition on which it was to depend be or be not performed. It cannot be supposed to have been his intention that the devisee should take possession under this devise, before the interest vested in him. The interest, therefore, must have vested previously, or at the time. The language of the testator does not indicate the intention that the marriage must take place during the life of his wife; nor do the circumstances of the parties justify us in imputing such an intention to him. The time of her death was uncertain, and it might follow close upon his own. The contemplated marriage could not possibly take place until the lapse of many years, because one of the parties had not come into existence. William and Rachel Trigg had not at the time, and never have had, a daughter. The testator therefore has fixed a time when the estate is to vest, which might probably precede the happening of the event on which its continuance is to depend. This is clearly a condition subsequent, as to those lands in which an estate for life is given to the wife of the testator.

Does any reason exist which will authorise a distinction between those lands in which the wife took a life estate, and

those of which no other present disposition is made in the will?

The testator makes no distinction. In one clause he gives "his whole real estate at the death of his wife to William King, son of his brother James King, on condition," &c. If, as the language would seem to indicate, the devisee was entitled to possession of the whole property at the same time, that is, at the death of the testator's wife, it would follow that the condition on which the whole depends is a condition subsequent. If the devise should be construed, as the defendant in error contends, to give William King a right to the immediate possession of that part of the estate of which no other disposition is made, does this circumstance furnish any reason for the opinion, that this part of the state depends on a condition precedent? We think not. The will might then be construed as if it were expressed thus: "in case of having no children, I then leave and bequeath all my real estate, subject to the devise to my wife for life, to William King, son of my brother James King, on condition of his marrying," &c. This is the most unfavourable manner for the defendant in error in which the question can be presented. It waives the benefit derived from fixing a time for the possession of a considerable part of the estate, which might very probably precede the event on which its continuance is made to depend. Had even this been the language of the will, the estate in the lands would, we think, depend on a condition subsequent.

It is a general rule, that a devise in words of the present time, as I give to A. my lands in B. imports, if no contrary intent appears, an immediate interest which vests in the devisee on the death of the testator. It is also a general rule, that if an estate be given on a condition, for the performance of which no time is limited, the devisee has his life for performance. The result of those two principles seems to be, that a devise to A., on condition that he shall marry B., if uncontrolled by other words, takes effect immediately; and the devisee performs the condition, if he marry B. at any time during his life. The condition is subsequent. We have found no case in which a general devise

in words, importing a present interest in a will, making no other disposition of the property, on a condition which may be performed at any time, has been construed from the mere circumstance that the estate is given on condition, to require that the condition must be performed before the estate can vest. There are many cases in which the contrary principle has been decided(*a*). We think then that the condition on which the devise to William King depended, was a condition subsequent.

2. The second point is one of more difficulty. Does that part of the real estate which is not otherwise expressly disposed of, vest in William King immediately, or at the death of the testator's wife ?

The words are, " in case of having no children, I then leave and bequeath all my real estate, at the death of my wife, to William King, son of brother James King, on condition," &c.

These words certainly import that the whole estate should vest in possession at the same time, and mark with precision when that time shall be. This express provision can be controlled only by a strong and manifest intent, to be collected from the whole will. But the intent of the testator is the cardinal rule in the construction of wills; and if that intent can be clearly perceived, and is not contrary to some positive rule of law, it must prevail; although in giving effect to it some words should be rejected, or so restrained in their application, as materially to change the literal meaning of the particular sentence.

The counsel for the defendant in error insists that the intent to give the real estate not otherwise disposed of immediately to William King, is apparent on the face of the will, and must control the construction of the clause under consideration. This proposition has been so fully discussed at the bar, that the court need only restate the principles which have been already advanced in the argument.

(*a*) 2 Atk. 18. Cases T. T. 164, 166. 2 P. Wms, 626. 2 Pow. on Dev. 257. 1 Salk. 170. 4 Mod. 68. 2 Salk. 570.

Of the immense estate left by the testator, about one half, including her dower, was given to his wife and others for her life. The residue was given to William King immediately, on the trust mentioned in the will, or given by implication to the testator's wife, or was permitted to descend to his heir at law.

As the devise to William King was on a condition subsequent, it may be construed, so far as respects the time of taking possession, as if it had been conditional. The condition opposes no obstacle to his immediate possession, if the intent of the testator shall require that construction.

We will first consider the supposed implied devise to the wife.

As William King was not the heir of the testator, a devise to him at her death does not necessarily imply an estate in her during life; and the will itself furnishes strong reason for rejecting this construction. His wife, as might well be supposed, was first in his mind, and was kept in mind throughout the will. He notices her legal right to dower, so as to avoid a possible implication that what he gave her was in lieu of dower, and to secure her from the necessity of relinquishing all interest in the estate bequeathed to her as preliminary to claiming her dower. She claims her dower under the will, as she does the other large estate bequeathed to her. It is not probable that a person who was careful to notice even that to which she would have been entitled under the law, would have omitted totally a very large property which she could claim only under the will. He even notices the remainder of a small property in the occupancy of his father; and mentions his wife in many other parts of his will, in a manner to add to the improbability of his having totally omitted her name, when a very large benefit was intended. It seems to us to be contrary to reason and to the ordinary rules of construction to intend, that a large estate is given by an unnecessary implication to a wife who takes her dower in the whole, and also a large part by express words. We think it very clear that there is no *implicative* devise to the wife.

Does the property in question descend to the heir at law

during the life of the wife ? Was it the purpose of the testator to die intestate with respect to it until her death ?

We cannot think that such was his purpose ; or that his will authorizes the court to say so.

The introductory clause indicates an intention to dispose of all his estate. He says, " I, William King, have thought proper to make and ordain this to be my last will and testament, leaving and bequeathing my worldly estate in the manner following." These words are entitled to considerable influence in a question of doubtful intent, in a case where the property is given, and the question arises between the heir and devisee respecting the interest devised. The words of the particular clause also carry the whole estate from the heir, but they fix the death of the testator's wife as the time when the devisee shall be entitled to possession. They are, " In case of having no children, I then leave and bequeath all my real estate, at the death of my wife, to William King, son of brother James King," &c.

It is admitted that if this clause stood alone, unexplained by other parts of the will, the real estate, not otherwise disposed of, would descend to the heir. The law gives to him whatever is not given to others. But if other provisions in the will show an intent that the legal title of the heir should not prevail, those other provisions must be respected in construing the instrument(*a*).

When the will was made, the testator's father was alive, and was consequently to be considered as his heir. He was an old man ; and the provision made for him seems to have contemplated only a comfortable supply for the wants of one who had grown up and lived in simple unexpensive habits. The testator gives him for life the houses in which he then resided, with so much land as he might choose to farm, what fruit he might want, and the spring house, subject to the direction of his wife ; also the sum of $200 per annum during his life ; and, if fire should destroy his Fincastle house, a

(*a*) Cases, T. T. 157. 1 Coke, 1. 3 P. Wms, 295. 1 Wils. 333. 1 Ves. 225. 1 Wash. 97, 107. 1 Call. 132. 1 Munf. 143, 145,

farther sum of $220 per annum, while his income from that source should be suspended. This property is given to his wife for life on the death of his father. These moderate provisions for the heir, contemplating only the ease and comfortable supply of the wants of an old man, comport very little with the idea of leaving an immense estate, consisting among other articles of numerous tracts of land, remote from each other, most probably of very difficult management, to descend to him. It is not probable that this estate would be left to descend to him for the life of Mrs King. Her surviving him was probable, and the testator expected she would survive him. The lands devised to him are given to her for life.

The father, who was the presumptive heir when the will was made, died during the life of the testator. This event is not supposed to affect the construction of the will. But were it otherwise; were it supposed that he might look forward to that event, and contemplate his brothers and sisters as his probable heirs; he will furnishes arguments of great weight in support of the opinion, that he did not intend them to take any thing not expressly devised to them. The heirs of the testator, at the time of his death, were James King, a brother of the whole blood, Nancy Finlay, a sister of the whole blood, Elizabeth and Polly, the daughters of Elizabeth Mitchel, a sister of the whole blood, Samuel King, a brother of the half blood, and Hannah Allen, a sister of the half blood. Each of these persons is noticed in the will. For some of them, an ample provision is made. To others, less favour is shown. The legacies to his brother and sister of the half blood are inconsiderable; while his bequests to those of the whole blood are large. No one of them is omitted. The circumstances that his mind was clearly directed to each, and that he has carefully measured out his bounty to each, discriminating between them so as to show great inequality of affection, operate powerfully against the opinion, that he intended to leave a very large property to descend upon them by the silent operation of law.

The whole will proves the primary intention of the testator

to have been to keep his immense real estate together, and to bestow this splendid gift on some individual who should proceed from the union of his own family with that of his wife. In case of having no children, he gives all his real estate, at the death of his wife, to William, the son of his brother James, on condition of his marrying a daughter of William Trigg and Rachel his wife, in trust for the eldest son or issue of said marriage. If such marriage should not take place, he gives said estate to any child, giving preference to age, of William and Rachel Trigg, who should marry a child of his brother James, or of his sister Elizabeth. William Trigg was the brother of his wife. His primary object then is the issue of a marriage between his nephew William King and a daughter of William Trigg, by his then wife, the niece of the testator. His second object was the issue of any marriage which might take place between any child of William and Rachel Trigg, and any child of his brother James or of his sister Elizabeth. That both these objects have been defeated by the course of subsequent events, does not change the construction of the will. The testator undoubtedly expected the one or the other of them to take place, and his intention respecting the immediate interest of the devisee or the descent to the heir, is the same as if a daughter had afterwards been born to William and Rachel Trigg, who had intermarried with William King. The will therefore is to be construed in that respect, as if the contemplated marriage had been actually consummated. It was not very probable, at the date of the will, that the devisee of this immense fortune might come into existence in less than twenty years, nor that the wife might live fifty years. In the mean time no provision whatever is made for him. To what purpose should the profits of the estate intended for him be withheld during the life time of the testator's wife, since those profits were not to be received by her? Why should her death be the event on which lands in which no interest was given to her, should be enjoyed by the devisee? We perceive at once the reason why the devise of those lands in which she had a life estate, should take effect at her death; but there is no reason for postponing the possession of lands from which she could derive no

benefit, and which were not given to others to the same period.

The devise over too has considerable influence in this question. It may be on a contingency too remote to be supported by law; but the testator's intention is not the less manifested on that account. He did not suppose it too remote; and in fact it might have happened in a few years. Had William King, the devisee, died young, or had William or Rachel Trigg died without leaving a daughter, a fact which has actually happened, and any child of William and Rachel Trigg had married a child of James King or of Elizabeth Mitchel, then the whole estate is given to such child, and to the issue of the marriage. Had either of these events taken place, the estate is given from the heirs. It consists very well with the general intention of the testator and his mode of thinking, as manifested in his will, to suppose an intention that the profits should accumulate for the benefit of those for whom the estate was designed; we can perceive nothing in the will to countenance the idea, that he contemplated the descent of these lands to his heirs. Nothing could be more contrary to his general purpose than the distribution which the law would make of his real estate among his heirs. This may be the result of a total failure of all the provisions in the will, but cannot be considered as the immediate effect, if a contrary intention is perceived, and if the words can be so construed as to support that intention.

The words used by the testator show that nothing was farther from his mind than a partial intestacy. He says, he has thought proper to make his will, " leaving and bequeathing his worldly estate in manner following :" after making a considerable provision for his wife, and devising to others during her life, he gives " all his real estate at her death" to his nephew, on condition, and on failure to perform the condition, gives " the said estate" over. Being about to devise all his estate to his nephew, and knowing that his wife and others would hold a large part of it for her life, it was obvious that his nephew could not take *all* till her death. But if he devised the whole estate, that which could not be taken by the wife or by others for her life, would pass to the nephew,

if a clear intention appears in the whole will to intercept the descent to the heir; although the clause taken literally, would postpone the possession, even of that part in which the wife has no interest, till her death. To effect this intention, the court will vary the strict meaning of words, and sometimes transpose them. 1 Call, 132. The word "all" may be transposed, so that the clause may read, "in case of having no children, I then leave my real estate, *all*, at the death of my wife, to William King," &c. Let the clause be thus read, and no one could hesitate on its construction. The whole estate is devised to William King; but the possession of that part of it which is given to the wife or others for her life, is postponed till her death. The whole will bears marks of being written by a man whose language was far from being accurate, and whose words, if taken literally, would in some instances defeat his intention. That intention, we think, was to devise his whole real estate to William King, in trust, on a condition subsequent, postponing the possession of that part of it which was given to the wife and others for her life, till her death.

3. The third point is one of great interest to the parties. Did William King take an estate which, in the events that have happened, enures to his own benefit, or is he in the existing state of things to be considered as a trustee for the heirs of the testator?

This question cannot properly be decided in this cause. It belongs to a court of chancery, and will be determined when the heirs shall bring a bill to enforce the execution of the trust. We do not mean to indicate any opinion upon it. The legal title is, we think, in William King, whoever may claim the beneficial interest, and the judgment is therefore affirmed with costs.

Mr Justice JOHNSON dissenting.

The defendant here was plaintiff in ejectment in the court below, in a suit to recover certain lands, part of the estate of William King the elder.

The cause comes up on a case stated according to the

practice of Virginia, and upon which judgment was rendered for the plaintiff.

The right to recover depends upon the will of William King the elder, and the events that have occurred to defeat or give effect to the provisions of that will.

The operative words of the will are these. "In case of my having no children, I then leave and bequeath all my real estate, at the death of my wife, to William King, son of brother James King, on condition of his marrying a daughter of William Trigg and my niece Rachel his wife, in trust for the eldest son or issue of such marriage; and in case such marriage should not take place, I leave and bequeath said estate to any child, giving preference to age, of said William and Rachel Trigg, that will marry a child of my brother James or of my sister Elizabeth, wife to John Mitchell."

The testator died without issue, and none of the devisees intended to be provided for came within the description of heir at law.

As Mrs Trigg died without having had issue female, the marriage contemplated for William the defendant never became possible; neither has any one of the marriages contemplated in the alternative taken place between the issue of the Triggs and the issue of testator's brother or sister; but from the case stated it appears that, although remote and improbable, the event of one of the contemplated marriages is not impossible.

These however appear to be immaterial facts in the present case; since it has not been contended in argument that the limitation over depending upon the failure of William's marriage with a daughter of the Triggs, is limited by the will to take effect within the term prescribed by the law of executory devises. Unless it could be confined to the life of Mrs King on the failure of William's marriage, it is obvious that the object of that devise over might not come in esse until after every life in being had terminated, and might not marry for more than twenty-one years afterwards.

Without committing myself however on this point, I shall pass it over; considering it only as assumed for the purpose

: of the present argument. After the most diligent attention to the questions in this cause, I cannot help coming to the conclusion, that its difficulties are rather artificial or factitious; and that the true legal view of it is that which is most simple and most consistent with the truth of the case, to wit; that as to the mass of his estate comprised in this clause, the testator's views had been wholly baffled by events; that the devise in favour of the offspring of certain marriages in his own family having altogether failed, the law must dispose of his property, he having made no ulterior disposition of it: and this at last will probably come the nearest to a correct view of the testator's intentions; for we are at liberty to conclude, in the absence of such ulterior disposition, that unless the estate should vest in the manner in which he had proposed to vest it, he was indifferent as to what became of it, or could do no better than leave it to the law. If he had felt that strong predilection for his supposed favourite nephew, the present defendant, which was so much insisted upon in argument, it may be presumed that the interests of that nephew would not have been forgotten.

Much use has been made of this assumed predilection, in order to establish an inference of intention in William's favour.

To my mind the will seems calculated to induce a contrary conclusion; for there is not a provision in the will made in his favour, individually. He takes, if at all, in trust for his own issue, and even that issue is only conditionally an object of favour; unless mingled with the blood of the Triggs, it is rejected, and the blood of the Triggs is followed up into other connexions, to William's entire exclusion. Nor is the offspring of his brother and sister admitted to higher favour, unless they be connected with the offspring of the Triggs.

I think it clear, then, that the primary objects of testator's bounty were the children of the Triggs, or their offspring; and not William or his offspring.

At the close of the argument at the last term, I intimated to counsel my impression that the cause had not been argued on its true grounds. I considered it a case of conditional

limitation; whereas it was argued exclusively with reference to the law of conditions: the one party maintaining that the marriage of William was a condition precedent, and therefore, as it never took place, nothing ever vested in him; the other, that the marriage was a condition subsequent, and having become, without default in him, impossible, he took the estate discharged of the condition; but both conceding that the cause must be disposed of on the law of conditions.

It is clearly a case of conditional limitation; but if it is to be decided on the law of conditions, instead of the law of contingencies, I think there is abundant reason for maintaining that it is a case of condition precedent, not subsequent. Were this a common law conveyance, I should think differently, for reasons well known to the profession; but in a will there is not one case in a thousand in which it would ever enter the mind of a testator, when he gives upon condition generally, that any interest vests until performance. I feel no hesitation in laying it down as the ordinary import of words of condition in a will, that they impose a condition precedent, unless accompanying words or the general purpose for imposing the condition suggest the contrary. In the present instance, there cannot be a reason consigned, why any interest should vest in William, prior to that marriage which was to give birth to the issue that was the sole object of the testator's bounty. It was not William for whom any beneficial interest was intended, but the issue of a particular marriage, in which the will distinctly shows that the blood of the Triggs was the favoured object. We must force the words of the testator from their simple and natural meaning, before William can in any event become more than a mere trustee in interest. And why create him trustee? At his tender age too, for an event so remote and uncertain; for persons whose coming in esse depended upon so many contingencies, must necessarily be so long deferred; and whose interests would by operation of law be committed into hands so much more competent. Why make him a trustee, who would need himself a guardian?

It has been urged, that the testator has declared he did not mean to die intestate, as to any part of his property;

and that marriage being a valuable consideration, William must be considered a purchaser.

As to the first of these arguments, it is clear that the testator never lost sight of his avowed intention, and actually did dispose of all his property, though not of all his estate in it; and with so many alternatives and precautions, as might well have satisfied an ignorant man, if not any man, that he could not die intestate as to any part of it. And as to William's being a purchaser, although it might well be denied before the event of his marriage, yet if it be admitted, the consideration in view was not his own advancement, but that of his issue. That was to him a legal and adequate consideration, either for marrying or waiting for the marriage. A purchase made for a child, is a case excepted from that class of resulting trusts which arise when one individual pays the consideration, and another takes the title. The natural feelings imputed to the parent are held sufficient to take the case out of the general rule. 2 Mad. Ch. 116, et passim.

If this will is to be adjudged to vest a present interest in William, subject to be defeated by breach of the condition, or rather waiting to be rendered absolute by the performance of the condition; in other words, if it is to be construed to create a condition subsequent, it must be for the purpose of carrying into effect this will, or some purpose of the testator expressed in it. But if it can be shown that it would be nugatory as to William, and unnecessary as to all other interests, the argument fails.

I can conceive of no interests that can be involved in this question, unless it be, 1. The interests of the devisees over; 2. Those of the heir at law; or, 3. Those of William himself.

Now, as to the first, it would be contrary to the most express terms of the will, to give William a continuing interest, or any present interest. On a question of intention, it is immaterial whether the devise over be too remote or not too remote. The argument is the same, and as to them, the devise creates a *legal* interest : they are not to take under the *trust* to William; but in the event of his marriage failing, the devise

over is of a *legal* interest, so that the trust is expressly restricted to the object of its creation, which object arises only upon the marriage of William. The words are, " and in case such marriage should not take effect, I leave and bequeath such estate to any child," &c. So that upon the failure of the marriage, the trust was intended to be, as to the devise over, as though it never had been mentioned.

This is expressly limiting William's interest to the purposes of its creation, and rendering it idle and useless, except in the event of the marriage.

And why should the heir at law ask to invest William with an existing interest? He has no need of a legal estate in William to maintain his right. His claim, as of an undisposed residue, is better than of a resulting trust under the devise to William.

Or why should the court adjudge this a condition subsequent in behalf even of William himself? The law is clear, that he can take no beneficial interest under this will; his case is one of the strongest possible against the arising of any implication in favour of a devisee. In the case of Wheeler *vs.* Sherval, Mosely, 301, case 165, in which the executors claimed a beneficial interest in the residue of property given them in trust, the court declares it to be the strongest case possible against them, that they take expressly in trust.

And in the case of Milnes *vs.* Slater, 8 Ves. 308, where a similar claim was preferred, it was held to be conclusive against it, that one of their number was created trustee. The heir is not to be precluded or postponed, except upon express words, or strong, if not unavoidable implication. Here the implications are all against him who would preclude the heir at law.

If then the purpose and the words of the will point to the marriage of William, for the initiation of the testator's bounty, and no interest or object whatever will be subserved by vesting in William a present interest; it follows that the marriage, which is the condition, should be held a condition precedent.

Nor can I feel the force of that argument in favour of a present or beneficial devise to William, which is deduced

from the circumstance, that no provision is made by the will for the application of the income during the interval that must ensue between the marriage of William and birth of issue; an interval which, by possibility, might last many years.

If this were an application for a maintenance out of that income, such an implication might have weight; but it certainly goes no farther: and even to that point the inference is not unavoidable, since it is perfectly consistent with the character and duties of a trustee, to receive and invest the rents and profits of the trust estate in expectancy of the event which is to appropriate them. And where no specific instructions are given him, a prudent man will claim and receive the directions and protection of a court of equity, in applying such income; it is every day's practice.

If then neither does the will give nor the law imply any beneficial interest to William, there can be no reason for vesting any thing in him before the marriage.

Believing as I do, that if the case must be disposed of upon the question whether the condition, if a case of condition, be precedent or subsequent, it ought to be adjudged a condition precedent; I should here conclude. But as the case has been laid over, and there is no knowing on what point it may go off, I must proceed to examine it in other points of view.

I will then next examine the rights of William upon the hypothesis that it is a condition subsequent.

If a condition subsequent, he can only, in the most favourable view of his interests, be placed in the same relations and acquire the same rights by its becoming impossible, that would have resulted from the performance of the condition.

Suppose then the condition performed, and what would have been the character and extent of his rights? On what principle could he be discharged from the trust on which every thing is given to him that the will gives? Would he have held to his own use or to that of his issue? He would not have acquired an estate tail under the rule in

Shelly's case, because he was a mere trustee; his legal es-
tate could not unite with the use to his issue so as to make
one estate. And if he would have held in trust for his issue
by that marriage, what would have been the consequence of
his dying without issue? The question is easily answered.

The reversion of the use in the event supposed, never
passed from the testator. The disposition of the law was this:
upon the death of testator, the whole descended upon the
heir, to await the event of William's marriage. Upon his
marriage, he would have became entitled to take and hold in
trust for the issue of that marriage. But what is the rule of
law when a trust is created for an object that never comes
into existence, or a purpose that fails? It cannot be ques-
tioned that the trustee then holds to the use of the heir at
law. I will not say it is absurd, but it does appear to me
irreconcilable with any principles that I am acquainted with,
that a trust should be converted into a beneficial interest
by the occurrence of an event which makes the trust idle and
without an object; and it is not easily reconcilable with rea-
son or with the views of the testator, that an interest which
the heir at law would unquestionably have retained even
after the marriage, should be divested by the impossibility
that the marriage should ever take place.

There is not wanting legal authority for maintaining, on
the contrary, that had the marriage taken place, and the
wife died without issue, so as to render it impossible that the
object of the trust should ever come in esse, the estate would
immediately have returned to the heir at law. I allude to
the case of Mansfield vs. Dugard, 1 Eq. Ca. Abr. 195, 1
Fearne, 372, in which the devise was to the wife until the son
attained his age of twenty-one years. The son died at thir-
teen, and it was ruled that the wife's estate determined on
the son's decease.

But it is with reluctance I bestow time upon examining
these questions, so thoroughly am I satisfied that this case
does not turn on the doctrine of conditions. It is a case of
conditional limitation, and therefore to be disposed of upon
very different principles. Cases of conditional limitation

partake of the nature of conditions; but they are cases of contingency, and to be adjudged upon the principles applicable to contingent estates. Their distinguishing characteristics are, that they contain a condition either to divest an estate vested, or to prevent the vesting of an estate contemplated, and to carry over the interest to another party, or to some other purpose, not to the heir. Whereas it is indispensable to the legal idea of a condition that it should enure to the benefit of the heir, that he should enter, and that the effect of entry should be the restoration of the original estate, not the creation of a new estate. A conditional limitation is comprised among executory devises, and therefore can be created by will alone; but estates on condition may be created by deed or will. As to the estate to be created or carried over, as well as in those instances in which it anticipates or prevents an estate from vesting, it is obvious that conditional limitations must be assimilated to conditions precedent. But as the contingency may also operate to divest an estate taken presently, it is equally obvious that it then approximates to a condition subsequent in one of its effects. In either case, however, it is regarded as a contingency, and the law of conditions is not applied to it, to any purpose that would defeat the estate of the second taker. It is, on the contrary, so moulded and applied as may give effect to the devise over.

The question, whether this is a case of condition, or of conditional limitation, is easily decided by subjecting it to a very simple and obvious test.

Let us assume for argument, that the devise over on failure of William's marriage is not too remote, that he took under a condition subsequent, and committed a clear breach of the condition. In that event, if this is a case subject to the law of conditions, the heir alone could enter, and his entry would restore the original estate, not carry over an estate to another; for it is a canon of the law of conditions, that although entry for condition broken may defeat one estate, it cannot create a new one, or carry over another estate; it may restore the estate of him who imposed the condition, but does no more.

What then would become of the devise over? of the will? and of testator's intention? They would be defeated; and hence words of condition in such cases are construed words of limitation, and the condition converted into a contingency, upon the happening or failure of which the estate devised in the alternative goes over and vests without entry. There is no other mode of carrying into effect the intention of the testator, but by giving to his language a meaning that will comport with that intention. The only difficulty in this cause, and that which probably pre-occupied the attention of counsel with the law of conditions, has resulted from mere casualty. By a series of unanticipated events, the heir at law is at this time actually thrown into the same relation, with regard to the defendant here, in which he would have stood, had the case been one purely of condition. That is, if the devise over be put out of the will, as too remote in its creation, then, in effect, the entry of the heir, if he has a right to enter, would enure to his own benefit.

But this can make no change in the law of the case. Whatever was the legal character of the right of the parties, it was the effect of the testator's intention as deduced from the will. His intention remains the same, although the arbitrary rules of law may prevent that intention from being carried into effect. The rule of law which converts words of condition into words of limitation in certain cases, proceeds upon intention, and cannot be affected by the occurrence of incidents which defeat the execution of that intention. The present is one of the most frequent and familiar occurrence in the books, of those instances in which that rule of construction prevails. Neither the first taker, nor the devisee ever was heir at law; and in that case lord Hale has said, (Fry's case in Ventris) "that it is a rule which has received as many resolutions as ever point did, that although the word condition is used, limiting the estate over to a stranger makes it a limitation."

For these reasons I am clearly of opinion, that the rule of law applicable to conditions subsequent, when become impossible, is not to govern this case. That it must be disposed of on the law of conditional limitations and William's

marriage, is to be regarded as a contingency, not a condition.

I have already given my reasons for holding this to be a condition precedent, or rather a contingency which is to vest, not to divest an interest; and this is always a question of intention to be deduced from the views of the testator in imposing conditions. If a condition precedent, then it is one of those instances in which the first estate is anticipated, and never vests; the case becomes a very plain and simple one, and the will must operate as if it read thus, "if W. K. shall marry a daughter of the Triggs, then I give the residue to him in trust, &c.; if such marriage shall not take place, then I give it over." And thus construed, there can be little doubt that the will comes nearest to the good sense of the case and the views of the testator. Nor can there be any ambiguity in the law of the case, if so construed. William would take nothing, because he never married; and the devise over being too remote, there is no first taker to carry the estate. It is then an undisposed residue, and to be distributed according to the lex loci. Under this view of the case, the judgment must certainly be against William King.

But if he took a present interest, defeasible upon the condition or contingency of refusing to marry a daughter of the Triggs; then the inquiry is, what effect has it upon the state of right in a case of conditional limitation, that without his fault such condition or contingency becomes impossible? On this point, which is very much of an authority question, it must be acknowledged there is a great dearth of adjudged cases, as well as of learning in elementary writers.

If it may be decided with analogy to trusts, the objects of which have failed or never come in esse; then they are considered as determined in favour of the heir at law, as in the bishop of Durham's case. If it may be determined by analogy to the case of estates to endure until the happening of an event that has become impossible; then I have showed that it determined presently in favour of the devise over; the court declaring in the case of Mansfield vs. Dugard, that he may wait for ever if his right is to be suspended on an impossible event.

And if in the absence of any other established rule we may be guided by the polestar of devises, the testator's intention, certainly nothing could comport less with his views, than to permit an event which he looked forward to as the certain cause of divesting William of even his fiduciary interest, to have the effect of vesting in him an absolute beneficial interest, or any other interest which could stand in the way of the claim of his own legal representatives.

If we submit the question to the plainest test of reason as applied to the law of limitation and contingencies; then it seems incontrovertible, that when a limitation over is made to depend upon the failure of a certain event, the limitation ought to take effect whenever it is ascertained that the event must fail, as when it has become impossible; and equally so, that when a previous interest, although passing presently into possession, awaits its confirmation from the happening of a certain event, that there is no reason for continuing that estate, when it is definitively established that the event on which it depends for confirmation can never happen. These were the principles recognized in the case of Mansfield vs. Dugard, and I think the reasonable result of all the doctrine of conditional limitations considered under the three heads into which the cases are usually distributed. There was a case cited in argument to sustain the judgment below, on which so much reliance was placed that I shall not pass it over unnoticed. It is the case of Thomas vs. Howel, reported in Salkeld and Modern, (1 Salk. 170. 4 Mod. 66.) and very defectively reported in both. The report in Salkeld does not give the half of the case; and that in 4 Mod. gives a very unsatisfactory account of the reasons which governed the court. An attentive examination of the facts, however, will enable us to understand the case, and to explain it in perfect conformity with the principles which govern my opinion.

It was a curiously mixed case, in which the law of conditions and conditional limitations were so blended as to have been scarcely severable. It was the case of a father, tenant in fee, and his three daughters, constituting his heirs at law. The father devises to one of the daughters a messuage called

Lawhorn, " upon condition that she marry T. T., and if she refuse to marry him, then over to trustees in trust to be divided among the three co-heiresses, equally or otherwise as they please." The marriage became impossible by the death of T. T. under twelve, and the question was which to apply to it, the law of conditions or the law of limitations. The majority of the court, three out of four, decided, that it came within the law of conditions. One held it to be a conditional limitation. On this case I would remark,

1. That it was well disposed of upon the law of conditions, for the devise over was in effect to the heir at law, so that the entry for condition broken would not have defeated the will, but have carried it into effect; the reason therefore for construing words of condition into words of limitation did not exist, especially as it is presumable that there was nothing to prevent the operation of the statute of uses in favour of the devisee over under the trust in the will, but,

2. There was room for a doubt on the question arising from the effect of interposing the trust, especially if the power of making an unequal distribution was well given to the trustees; for then the entry of the heirs would have defeated the testator's views; and it ought to have been held a limitation, according to the opinion of the dissenting judge.

3. I think it very clear, that the case alluded to was argued and decided under a general admission of bench and bar, that if held to be a case of condition, the effect of the condition's becoming impossible, would be in favour of the first taker; but if held to be a case of conditional limitation, that it would be in favour of the party claiming under the devise over. If the effect had been held to be the same in both cases, it would have been utterly idle to raise a question upon the will.

And lastly. That when the judges in that case come to the conclusion that it was a case of condition, and not of limitation, they proceed to examine the question, whether a condition precedent or subsequent, with a view to the leading motive of the testator, little regarding any particular phraseology. And certainly with a view to induce T. T. to address

the daughter, the more beneficially the will operated in her behalf, the greater would be the inducement held out; and accordingly they make it a condition subsequent. But a contrary reason operates here, for the leading motive is not the establishment of William King, but the formation and advancement of a particular family connexion. It would then have comported best with this testator's views to super-add the inducement of necessity, in order to incline William King to the proposed matrimonial connexion.

There could have been no reason for giving it to him until the marriage took effect; it would have been better to let it accumulate in the hands of the executors, especially considering his tender age at the date of the will.

Upon the whole I am satisfied, that if this case is to be disposed of on the law of conditions, there is nothing in the will or the views of the testator that should make it a condition precedent; and nothing certainly has occurred since to make it necessary to give it that character; for had he married, there would have been a resulting trust in favour of the heirs if the marriage failed to produce issue, and that would only have left the heir at law where he is now, without owing any thing to the aid of a trust. Whence it results, that it would have been useless and idle to have vested any interest in William at any time.

But I am perfectly satisfied that the case is one to which the law of limitations and contingencies alone is applicable, and that according to the principles that govern that class of cases, the impossibility of the contingency does not confirm the estate in the first taker, but defeats it.

I am therefore of opinion, that the judgment below should be reversed.