W. B. A. RAMSEY *v.* EDGEFIELD AND KENTUCKY RAILROAD
COMPANY and others.

April Term, 1876.

LAND CONTRACT — CONDITIONS. — A person having subscribed a large amount to the capital stock of a railroad company, entered into a written contract with the company, by which it was agreed that the subscription might be paid in fifteen acres of land, to be laid off in an oblong square along the road, according to boundaries given, a deed to be made by the subscriber to the railroad company "whenever the land is run off and its boundaries definitely located," the contract adding that "it is understood" the company "are to locate" their depot on the land; afterwards, a plat of the land having been made, a deed was executed by the subscriber, and left, with the plat, in the hands of a third person, "not to

be delivered until the depot was located and its erection so substantially commenced as would ensure its completion;" no depot was built, and the road has passed into the hands of another company. *Held,* that the location and building of a depot was not a condition precedent or subsequent, and that the creditors of the company with whom the contract was made could subject the land, as the land of the company, to the satisfaction of their debts, but that the heirs of the subscriber, he having died, were entitled to damages for the failure to locate the depot on the land, to be recompensed out of the proceeds of the land.

*John Reid,* for complainant.
*Allison,* for defendants.

THE CHANCELLOR: — The Supreme Court having determined, by overruling the demurrer filed in this case, that the complainant was entitled to relief upon the facts disclosed in the bill, all that remains is to ascertain whether those facts are satisfactorily established, and the extent of relief consequent thereon.

The Edgefield and Kentucky Railroad Company, whose southern terminus was in Edgefield, was organized by the subscription of nine or ten of the citizens, or property-holders, of Edgefield and its vicinity, to a sufficiency of its capital stock to meet the requirements of the law. Of these persons the principal subscriber was Dr. John Shelby, the largest owner of real estate in Edgefield, who subscribed $50,000. The larger part of the stock thus subscribed was afterwards transferred to a firm of contractors, who undertook to build the road. Dr. Shelby assigned to this firm $46,000 of his stock, retaining $4,000. On August 23, 1855, Dr. John Shelby, and Samuel Watson as president of the Edgefield and Kentucky Railroad Company, entered into an agreement, in writing, by which it was recited that the said Shelby had this day subscribed $30,000 to the stock of the said company, and that it was agreed that said subscription might be paid in fifteen acres of land, valued at $2,000 per acre, to be laid off in an oblong square along the road, according to boundaries given, a deed therefor to be made by Shelby to the company "whenever it is run off and its

boundaries definitely located." The agreement further recited that it was understood and agreed that the subscription then made "included the subscription of said Shelby now remaining unpaid on the books of the company." It was further understood "that the Edgefield and Kentucky Railroad Company are to locate their depot on the said fifteen acres."

On March 12, 1856, at a meeting of the board of directors of said railroad company, Dr. Shelby being himself a director, and present, this agreement was "offered to, affirmed, and received by the board, and ordered to be entered on the minutes."

On April 26, 1859, the land thus subscribed having been surveyed by the engineer of the company, and laid off by metes and bounds, a deed was drawn up conveying the same in fee to the said railroad company, both the plat and deed designating that part of the ground to be used as a depot. This deed was signed in the name of Dr. John Shelby, by Washington Barrow as his attorney in fact, the said Barrow being the son-in-law of Dr. Shelby, and intrusted with the management of his business, the said Shelby being old and in feeble health. This deed, written on the same sheet of paper with the plat, was, with the plat, left by the said Barrow and the engineer and agent of the railroad company with James H. Kendrick "for safe-keeping, and not to be delivered until the said depot should be so located, and its erection so substantially commenced as would insure its completion." Dr. Shelby was then alive, but died shortly afterwards.

In the meantime the Edgefield and Kentucky Railroad was built, principally with bonds issued by the state in aid of its construction. The company not being able to pay the interest on these bonds, a receiver was appointed by the state, who took possession of the road and ran it. Afterwards the road was seized by the military authorities of the United States, and used by them. On June 20, 1866, the

board of directors of the company, by resolution reciting that the road had been recently surrendered to them by the United States authorities, directed their president, by instrument of writing, to assign and transfer to E. A. Fort and William Connell, in trust for the payment of certain debts named, and to indemnify the sureties who might pay the same, "all uncollected stock remaining due upon the books of said company, not heretofore transferred, with power to collect the same." The assignment was made accordingly.

On January 16, 1869, this bill was filed by the complainant Ramsey, as a judgment creditor of the Edgefield Railroad Company for a large amount, whose executions had been returned *nulla bona*, and also as a creditor by open account, against the company, Fort and Connell as trustees, and the personal representative and heirs of Dr. John Shelby, to subject the said land, subscribed as aforesaid, to the satisfaction of the complainant's demands; claiming, also, to be a beneficiary under the assignment of stock to Fort and Connell, and asking, in the event the stock of Dr. Shelby passed by that assignment, to have the trust executed, and to come in for a benefit under it.

The railroad company answered, admitting its liability to the complainant, and submitting to such decree as the court might make. The personal representatives and heirs of Dr. Shelby demurred to the bill, but this demurrer was, upon appeal, overruled by the Supreme Court. These defendants have now answered, insisting mainly upon the statutes of limitations, and upon the ground that the establishment of a depot upon the land was a condition upon which the subscription was made, and that no such depot was ever erected. The railroad itself has been sold under proceedings instituted by the state, and is now owned by another company.

The statute of limitations, so far as the land is concerned, is not in the way of the relief sought. The land was to be conveyed whenever it was run off and its boundaries located,

which was not done until April 26, 1859 ; since which time,. taking out the period from May 6, 1861, to January 1, 1876, under the constitutional amendment and statute of 1865, the statute has not had the seven years' adverse pos-- session necessary to perfect the bar.    Besides, although Dr. · Shelby and his heirs have been in possession of this land all the time, using it as their own, there is nothing to show that this holding was not in strict accord with the contract,. which permits such possession until the company is in a. condition to demand a conveyance, namely, until the bound-aries are located. · If the deed of April 26, 1859, was the-deed of Shelby, he and his heirs held afterwards, not only under the original contract, but subject to the delivery of that deed according to the terms of the delivery to Ken--drick.    And whether that deed was the deed of Shelby or not, the possession of the land by Shelby and his heirs was subject to the rights of the company, and notice to the com-pany was essential to make it adverse.    Code, sec. 2768 ; *Gudger* v. *Barnes*, 4 Heisk. 570.

In this view, it becomes immaterial to consider whether Shelby did authorize the execution of the deed of April 26, 1859, or its delivery upon condition as an escrow.    After all, the rights of the parties turn upon the terms of the contract of August 23, 1855.    There never has been any adverse possession, within the meaning of the law, since that date, and there is nothing to show that the engineer of the company, who was the only person who seems to have had any thing to do with the transaction of April 26, 1859, had any power to change the original contract, or add a. condition not embodied in it.

The only question, therefore, in this connection is, Was the erection of a depot a condition precedent to the right of the company to demand a conveyance, or a condition subsequent, by the failure to perform which the estate would be divested ? And most clearly it was neither.    The stipulation of the agreement as to the title is in these words : " It is further

understood that the said Shelby is to make a deed in fee to the Edgefield and Kentucky Railroad Company for the said fifteen acres of land whenever it is run off and its boundaries definitely located." Under this provision, the right to a deed in fee is complete upon the location of the boundaries.

The last clause in the agreement contains all that is said about the depot: "It is further understood that the Edgefield and Kentucky Railroad Company are to locate their depot on the said fifteen acres." This language does not expressly, nor by any fair implication, say that the location of the depot shall be a condition at all, and certainly not a condition precedent. The previous obligation, to convey upon a location of the boundaries of the land, excludes the latter construction, and there is an absence of any of the usual forms of expression which imply a condition of either kind. *Murdock* v. *Mayor of Memphis*, 7 Coldw. 497 ; 2 Washb. on Real Prop. 3. Besides, the act provided for — namely, the building of a depot — is not one which necessarily precedes the vesting of the estate, but rather the contrary, as the railroad company would not be likely to build a depot on land to which it did not have the legal title. The rule is, that if the act or condition required do not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may as well be done after as before the vesting of the estate ; or if from the nature of the act to be performed, and the time required for its performance, it is evidently the intention of the parties that the estate shall vest, and the grantee perform the act after taking possession, then the condition is subsequent. 2 Washb. on Real Prop. 6 ; *Underhill* v. *Saratoga R. Co.*, 20 Barb. 455. It is clear that this contract does not require the location of the depot as a condition precedent. *Finlay* v. *King*, 3 Pet. 374 ; Co. Lit. 208 *b*.

Neither are the words used sufficient to create a condition subsequent, upon failure to comply with which the estate is to be divested. Such conditions, when relied on to work

a forfeiture, must be created by express terms or clear implication, and are construed strictly. 2 Washb. 6. The clause quoted from the agreement does not stipulate for a divestiture of title on failure to locate the depot, nor fairly imply it. It does not mention successors or assigns, and does not, therefore, run with the land, and is not binding upon such parties. *Emerson* v. *Simpson*, 43 N. H. 475. The title or estate is not dependent upon it in any way.

The bill does not claim that the land has ever been run off and its boundaries located, so as to enable the company to demand a deed in fee. The answers show that this requisite was complied with in April, 1859, and I think the survey then made may be considered as made by the company, and assented to by Shelby. The complainant is entitled to subject the interest of the company in the land to the satisfaction of his debt, and for this purpose to a sale of the land according to the boundaries of the survey. The location of the depot having become impossible by the failure of the company, the representative and heirs of Shelby are entitled to damages for the failure to comply with this stipulation of the contract, and to come in *pro rata* with the complainant for the payment of such damages out of the proceeds of sale. *Wilson* v. *Northampton, etc., Ry. Co.*, L. R. 9 Ch. App. 270. But, inasmuch as both parties have been remiss, the complainant will only be entitled to sell the land as it now is, without any claim for back rents, and the representative and heirs will only be entitled to damages for a failure in locating the depot upon said land as of this date, without any right to claim for taxes paid or for damages in the intermediate period. There will be a reference to the master to ascertain the amount of complainant's debt, and the damages sustained by the defendants. And until the coming in of these reports other matters will be reserved.