SHUMAN v. HELDMAN.

1. Wills—Condition Precedent—Contract.—The allegations that the wife of a testator was dictatorial, disagreeable, overbearing, penurious, demanded unpleasant service, deprived the contingent beneficiary of things necessary to sustain her position in life, to her

comfort, health and sustenance, and of social privileges, do not state such facts as show impossibility of performance of condition precedent to vesting of devise, that she reside with the widow of testator during her life and treat her kindly; but if this provision of the will is to be regarded as a contract, the whole must be performed by her to entitle her to the whole devise—residence for a short time with the widow will not suffice.

2. IBID.—IBID.—CONDITION SUBSEQUENT.—Whether the condition upon which a devise in remainder shall vest is precedent or subsequent, is a question of intention. Condition here that devisee in remainder shall live with testator during her life, is precedent. .

Before KLUGH, J., Greenville, August, 1901. Affirmed.

Action by Basil M. Shuman, executor of George Heldman, against Matthew Heldman, Emma Weise *et al.* From Circuit decree, defendant, Emma Weise, appeals.

*Mr. B. A. Morgan,* for appellant, cites: *These are personal legacies, and no legatee has any interest except in the money:* 8 Rich. Eq., 79; 23 S. C., 387, 513; 25 S. C., 149; 8 Rich. Eq., 291. *Same rule as to conditions precedent do not apply alike to real and personal estate:* 2 Jar. on Wills,* 13; 1 Story Eq. Jur., sec. 291. *Condition precedent can be waived, performance excused, and part performance is equivalent then to full performance:* 7 Ency., 121, 123; 6 Ency., 508; 5 Ia., 336; 2 Spear, 126; 4 McC., 247; 2 Chitty on Con., 1083-89; Clark on Con., 684, and *ante. Wife of testator had the power to so waive full performance and accept part:* 1 Rich., 270; 2 Strob., 197; 19 S. C., 173.

*Messrs. B. M. Shuman* and *Adam C. Welborn,* contra, cite: *Is this a condition precedent?* 1 Underhill on Wills, secs. 482-3; 2 Jar. Wills, *7; Rich. Eq. Ca., 321; 28 S. C., 325; 47 Me., 495. *Impossibility does not excuse performance of conditions precedent:* 1 Underhill on Wills, secs. 486, 495, 489; 2 Jar. on Wills, *9, *13, vol. 3, *Id.,* 704, note; Story Eq. Jur., sec. 1306; 21 S. E. R., 39; 28 S. C., 325; 19 S. C., 170; Rich. Eq. Ca., 321; 2 Black. Com., 157; 14 Vesey, 341; 12 L. R. A., 110; 76 N. W. R., 600. *Funds in*

*Court are proceeds of real estate, and represents real estate:*
25 S. C., 389.    *But if it is a personal legacy the condition
must still be performed:* 18 Ency., 2 ed., 732, notes 4 and 8;
1 Underhill on Wills, secs. 509, 510, 517, 518, 521; 7 Am.
R., 479; 12 L. R. A., 110; Rich. Eq. Ca., 321; 19 S. C., 170;
57 Conn., 24.    *What is impossibility of performance?*
Story Eq. Jur., sec. 1305; 1 Underhill on Wills, secs. 416,
516; 27 L. R. A., 399; Jar. on Wills, *807; 19 S. C., 170;
12 L. R. A., 110; 19 S. C., 170; 27 L. R., Jr., 399.    *Was
there sufficient performance?* Story Eq. Jur., sec. 291; Wil-
liams on Exors., *428, 1133-4, 789; 3 Jar. on Wills, 704; 3
S. C., 502; 2 Strob. Eq., 395.    *What is waiver?* 28 Ency.,
1 ed., 526, 528, 531.

April 15, 1902.    The opinion of the Court was delivered
by

MR. JUSTICE POPE.    George Heldman departed this life
on the 3d day of October, 1892, leaving a last will and testa-
ment, which the plaintiff, as executor, caused to be admitted
to probate in the probate court for Greenville County, in this
State, on the 8th day of October, 1892.    By the 5th item of
said will, he devised and bequeathed all the rest and residue
of his whole estate unto his wife, Mrs. Matilda Ann Held-
man, for and during her natural life, with the right to use as
much of the *corpus* as may be necessary to her support and
maintainance during her lifetime, if the income and interest
of his said estate was not sufficient for her support.    By the
7th item, the testator provided as follows: "Item 7. I also
devise and bequeath that after the death of my said wife,
Matilda Ann Heldman, that the other three-fourths of my
whole estate, both real and personal, shall be divided and
distributed as follows: First. To my niece, Miss Emma
Weise, provided she removes to this State and resides with
my wife, Matilda Ann, during the lifetime of my said wife,
Matilda Ann, and is kind and affectionate to her, the one-
half of my whole estate, both real and personal, to her and
the heirs of her body forever; but if my said niece, Emma

Weise, does not remove to this State and reside with my said wife, Matilda Ann, during her lifetime, or should she, the said Emma Weise, remove to this State and reside with my wife, Matilda Ann, but dies before my said wife dies, leaving no lawful child or children, then the one-half of my whole estate so willed to said Emma 'Weise, I do hereby devise and bequeath as follows: One-third of said one-half to my sister, Charlotte Weise, born Heldman; one-third of said one-half to my sister, Catherine Gimbel, born Heldman; one-third of said one-half to the children and grand-children of my sister, Elizabeth, born Heldman, to them and their heirs and assigns forever." On the        April, 1893, the said Emma Weise left her home in Germany and came to the State of South Carolina, and resided with the said Matilda Ann Heldman at her home in the city of Greenville, in this State, and did so reside until the        day of June, 1894, at which date she returned to the home of her parents, in the city of Bonn, in Germany, where she has continuously resided ever since up to the present time. Mrs. Matilda Ann Heldman, the life tenant, departed this life on the        day of February, 1900. Some time thereafter this action was commenced, to which Emma Weise was made a party defendant. The "Case for appeal" does not contain the whole complaint, nor the entire will of George Heldman. The articles numbered one and two of the complaint merely set forth the date of the death of George Heldman and his testacy, and the appointment and qualification by plaintiff as executor, respectively. The articles numbered 3, 4, 5, 6, 7, 8, 9, 15, 16, 17, 18, 19, 20, 21, are omitted in the "Case for appeal," but we insert the other sections of the complaint as follows, to wit:

"Section 10. That in and by the said last will and testament, the said George Heldman devised and bequeathed, after the death of his said wife, one-half of his whole estate, both real and personal, so devised and bequeathed to her for life and remaining at the time of her death, to his niece, the defendant, Emma Weise, to her and the heirs of her body

forever, provided she removed to this State and resided with his wife, Matilda Ann, during the lifetime of said Matilda Ann, and was kind and affectionate to her; but in the event that said Emma Weise did not remove to this State and reside with his said wife during her lifetime, or should she remove to this State and reside with his said wife, but die before she did, leaving no lawful child or children, then the said one-half of his estate so devised and bequeathed to said Emma Weise, be devised and bequeathed as follows: One-third of said one-half to his sister, Charlotte Weise, born Heldman; one-third of said one-half to his sister, Catherine Gimbel, born Heldman; and one-third of said one-half to the children and grand-children of his sister, Elizabeth, born Heldman, to them and their heirs and assigns forever.

"Section 11. That the said Emma Weise at the time of the making of said last will and testament and at the time of the death of said George Heldman, resided in the city of Bonn, on the Rhine, in Germany; and thereafter, to wit: during the month of April, 1893, being informed of the contents of said will, she came to this State, and to the city of Greenville, S. C., and to the home of the said Matilda Ann Heldman, in said city, for the purpose of residing with her during the remainder of the natural life of said Matilda Ann, as contemplated by said George Heldman in making said last will and testament; but the said Emma Weise remained and resided with said Matilda Ann Heldman only until the month of June, 1894—about fourteen months—at which time and during said month of June, 1894, she left the home of said Matilda Ann Heldman and the said city and this State, and returned to Germany, and has never been at the home of the said Matilda Ann Heldman, nor in the city of Greenville, nor in the State, since said month of June, 1894; and the said Matilda Ann Heldman, at and before the death of the said George Heldman and until her death, resided continuously at her home in the city of Greenville, S. C., in the county and State aforesaid.

"Section 12. That by reason of said Emma Weise leaving

the home of said Matilda Ann Heldman in June, 1894, and the State and city aforesaid, and returning to Germany and failing to reside with her until her death, she has forfeited her right to claim said property devised and bequeathed to her as hereinbefore stated, and by reason thereof failed to perform the condition on which said property was to vest in her and on which she would have been entitled to same; but the plaintiff is informed and believed that she claims some interest in said property by reason of removing to this State, though she did not remain here until the death of said Matilda Ann, and he, therefore, makes her a party to this action —denying, however, that she has any interest in said property.

"Section 13. That the defendant, Charlotte Weise, is the sister of the said George Heldman, mentioned in the said last will and testament and described therein as follows: 'My sister, Charlotte Weise, born Heldman,' and she is entitled to one-third of said one-half of his property under said last will and testament, the said Emma Weise not having performed the condition on which she would have become entitled to the same, as above stated."

Section 14 alleges that one-third of the one-half belongs to the children and grand-children of his sister, Elizabeth, and one-third of said one-half belongs to his sister, Catherine.

"Section 23. * * * and the plaintiff alleges that it appears from the face of said will, upon a proper construction of the same, that said George Heldman intended, when he made the same, that all his property should be converted into money at the death of his said wife, and said money distributed among the said legatees and devisees according to their rights, as hereinbefore stated."

The following is the answer of Emma Weise, omitting the caption:

"I. That she admits the allegations contained in paragraphs I, 2, 3, 4, 5, 6, 7, 8, 9, 21 of the complaint.

"2. That she denies the allegations contained in paragraphs 14, 15, 16, 17, 18, 19 and 20 of the complaint.

"3. That she admits the allegations contained in paragraph 23 of the complaint, except that portion wherein it is alleged that the said George Heldman, after all his property is converted into money, intended that the money should be distributed among the legatees and devisees, according to their rights, as interpreted by the plaintiff and as stated by him in his complaint. This interpretation she disputes and denies, and denies the statements except as above stated.

"4. She admits the defendant, Charlotte Weise, is a sister of the said George Heldman, deceased, but denies each and every other allegation contained in paragraph 13 of the complaint.

"5. She denies the allegations contained in paragraph 12 of the complaint, except so much thereof as alleges that she claims some interest in the property of said George Heldman, deceased.

"6. She admits the allegations contained in paragraphs 10 and 11 of the complaint, and alleges that when she heard of the devise and bequest of her uncle, as referred to in said paragraphs, she was then living in Germany, and was a girl of seventeen years of age, sound and of vigorous health and life. That, as alleged in paragraph 11 of the complaint, she came to the home of the said Matilda Ann Heldman, in the city of Greenville, county and State aforesaid, for the purpose of residing with her during the remainder of the natural life of the said Matilda Ann Heldman, as contemplated by said George Heldman in making said last will and testament. That she did this solely because of there being no other inducement than the devise or bequest of her uncle, the said George Heldman, as contained in 'Item 7' of his last will and testament, which is hereby referred to and which is also a part of plaintiff's complaint. That before leaving her home in Germany as aforesaid, this 'Item 7' of said will and testament was made known to her, and she was informed that said estate was a large and valuable one. She consid-

ered the terms and conditions set out in said will as to her, and after accepting them, she came all alone and at great expense to herself and her parents, to the home of her late uncle in Greenville, as aforesaid, on the           day of          , 189  , and made known to the said Matilda Ann her purpose in coming, and with the consent and acquiescence of the said Matilda Ann, took up her residence there, as required by the will of the said George Heldman, and began the performance of the duties therein required, and became as a child and member of the family.

"7. That the said Matilda Ann Heldman, by 'Item 5' of said last will and testament of George Heldman, deceased, was given all the rest and residue of his estate, which at the time of the death of the said George Heldman and also at the time of the death of the said Matilda Ann, was worth about $20,000 or more, for and during the term of her natural life, with the right and power to use so much of the corpus of the estate for maintainance and support as was necessary to make good any deficiency from the annual income of the said estate.

"8. She alleges as a matter of fact and as is alleged in the complaint, the income was not sufficient to maintain and support the said Matilda Ann and pay the taxes and insurance on the property of the estate, and that she refused to touch the corpus of the estate.

"9. That this defendant alleges such was the case while she lived with the said Matilda Ann.

"10. That having accepted the terms and conditions of said will, agreed to and acquiesced in by the said Matilda Ann, and having begun the performance of the duties required of this defendant, this defendant presumed she was entitled to and would be accorded the same treatment that a dutiful and affectionate child should receive from its parents.

"11. That this defendant was at all times and under all circumstances dutiful, kind and affectionate in every relation towards the said Matilda Ann.

"12. That the said Matilda Ann became so disagreeable,

31—63

overbearing, penurious, complaining and unbearable to this defendant, and required and exacted of her the servitude almost equaling that of a slave, and denied to her any social pleasures or privileges, and denied her many other matters necessary for her to maintain her station in life and necessary for her health, comfort and sustenance, and this defendant was compelled, without any fault of her own, to return to her home in Germany for her own safety, health, comfort and protection, and left here on the         day of '(June), 189(4),' greatly broken and injured in her health, and is now and has continuously since suffered much evil thereof.

"13. That relying upon the promise and provision as contained in 'Item 7' of the said George Heldman's last will and testament, this defendant entered upon the duties therein required, and intended and would have continued in the faithful and thorough discharge of the same, if left to her own devices and had she received the proper treatment; but for the reasons hereinbefore stated, she was prevented by the said Matilda Ann Heldman, the wife of her uncle and beneficiary of his estate, and the cause of her failure to remain as provided for in the will was due to the said Matilda Ann, and was in no wise occasioned, sought after or brought about by this defendant.

"14. Having acted upon the promise of her uncle as set forth in his said last will, and having been prevented from carrying out his wishes and performing all the acts required by him, solely by his said wife, who was his first and greatest care and object under the will, this defendant alleges that she is entitled to one-half of the estate of the said George Heldman, deceased, as is provided for her in said will to the same extent and in like manner as if all the conditions thereof had been actually performed.

"15. That the intention and direction of the said George Heldman, being to have his property as a whole converted into money before any distribution of the same should be made, making it all personal property, this defendant is entitled to have and to hold one-half of same absolutely.

"Wherefore, she prays judgment against the plaintiff: That he account for all the property, real and personal, that comes into his hands as executor," &c.

All the issues of law and fact were referred to the master of Greenville County, S. C. At the hearing before him, the plaintiff and certain of the defendants interposed a demurrer to the answer of Emma Weise, upon the ground that there is a failure in said answer to state facts sufficient for a defense. The said master sustained the demurrer in the following report:

The following is so much of the master's report as refers to the matter in question, to wit: "The master, to whom it was referred to hear and determine the issues involved in the cause, respectfully reports: That the plaintiff and the defendant, Charlotte Weise, and certain of the defendants herein, interpose three several demurrers to the answer of the defendant, Emma Weise, the grounds of which are specifically set forth in the written demurrer filed with me. The demurrers are on the ground that said answer does not state facts sufficient to constitute a defense, the grounds being specifically stated in said written demurrer. The main ground taken is that the gift to Emma Weise in the last will and testament of the said George Heldman was given on a condition precedent to be performed by the said Emma Weise before any property passed to her under said gift. From the said answer and the allegations of the complaint, admitted thereby, it appeared that the said gift was on the condition that the said Emma Weise should remove from her home in Germany to this country, and reside with Matilda A. Heldman, the wife of George Heldman, during the lifetime of the said Matilda A. Heldman. It appeared that she did come to the home of the said Matilda A. Heldman in April, 1893, and remain there until June, 1894, at which time she left the home of the said Matilda A. Heldman and returned to Germany, and has not been to the home of the said Matilda A. Heldman since said time, and that said Matilda A. Heldman continued to live at her home in the

city of Greenville, S. C., until 21st day of February, 1900, the day of her death. It, therefore, appears that the said Emma Weise has not performed the condition on which said property was given to her. She, therefore, is not entitled to the same, and I, therefore, sustain the demurrers to said answer. Certain facts were alleged in said answer seeking to excuse the non-performance of this condition precedent. I do not think that any facts excuse the non-performance of the condition precedent to the vesting of an estate. I think the condition must be performed as described by the instrument giving the estate. But even if any facts could be alleged excusing said performance, I do not think such facts are alleged in this answer, for at most they only amount to alleging that it was unpleasant for her to perform this condition precedent."

The defendant excepted to this report, and after full argument the exceptions were overruled and said report confirmed. An order was then made to distribute the estate to the exclusion of Emma Weise. She, therefore, appealed to the Court upon the following grounds:

"1. His Honor erred in confirming the master's report, wherein he held that the allegations of the answer at most only amounted to alleging that it was unpleasant for the defendant, Emma Weise" (to carry out the provisions of the will of her uncle, George Heldman); "whereas, his Honor should have held that they charge that it was impossible for her to carry out the provisions of said will as to her.

"2. His Honor erred in confirming the master's report, wherein he held that the allegations of the answer charge that said Emma Weise has not performed the conditions on which said property was given her. He should have (his Honor) held that said allegations charge part performance and the reasons of non-performance in full, and that said allegations amount to full performance on her part, as required by law under the circumstances given.

"3. His Honor erred in confirming the master's report, wherein he failed to construe 'Item 7' of George Heldman's

will in connection with the allegations of the answer, and where he held that she 'is not entitled to same,' meaning the portion of the estate set apart for her, this proposition being fully set forth in exception 4 to the master's report and incorporated in this 'Case.'

"4. His Honor erred in confirming the master's report, wherein he held the provisions of 'Item 7' of said will to be a condition precedent, and that there are not any facts which excuse the non-performance of a condition precedent to the vesting of an estate, and his Honor should have held that this is a personal bequest founded upon consideration, and that the strictness of the common law rule, even though it be a condition precedent, is modified; and further, he should have held that under the allegations of the answer this was not a condition precedent.

"5. His Honor erred in not holding that the allegations of the answer show that a literal compliance with the condition became impossible to the defendant, Emma Weise; that the impossibility was occasioned not by her but by the wife of the said George Heldman; therefore, the condition was as fully complied with as practically could be, and that was sufficient.

"6. His Honor should have held that after the defendant entered upon the performance of the condition or terms of the bequest, that any conduct on the part of the said Matilda Ann Heldman which prevented the full performance of the condition operated as a waiver of the condition, and the bequest cannot be avoided therefor, because under like circumstances the said George Heldman could not have avoided it, and the same rule applied to his wife.

"7. His Honor erred in not holding that the provisions of the will was an offer made by George Heldman to this defendant, made for the benefit of his wife, to be extended not until he was dead, and at a time when his wife claiming under him was in full possession of his estate. That an acceptance of such offer was at that time an acceptance to and with the wife, she as her husband's beneficiary and rep-

resentative as of one part and this defendant as of the other.

"8. His Honor erred.in not holding that the performance as alleged in the answer under the circumstances therein detailed was equivalent to a full performance, and that any further performance was excused by the said Matilda Ann Heldman, and that she had the power to excuse same.

"9. His Honor erred in not holding that the allegations of the answer show that this defendant did all in her power to perform the conditions of the will; that she was prevented from so doing by the said Matilda Ann Heldman; that being so prevented, her part performance was equivalent to a full performance, and that she is, therefore, entitled to the portion of the estate provided for her in said will."

This appeal has given the members of this Court much serious thought. At all times a woman in trouble should merit at the hands of men a solicitude lest she may be wronged. But laws are made for both sexes, and it is the duty of the Courts to enforce the laws as they find them. Let us now examine these questions.

*Exception 1.* What George Heldman may have intended we are compelled to learn from his will as it is written. By this paper we learn that he had formed a purpose to bring his sister's daughter, Emma Weise, from her own home in the city of Bonn, on the Rhine, to reside with his wife, Mrs. Matilda Ann Heldman, in her home in the city of Greenville, in the State of South Carolina, after his death. In the "7th Item" of his will he so provides. But this was not all, for he provided an inducement for her to leave her parents and home to come over to this State to reside with his wife, by leaving his said niece one-half of his whole estate, real and personal, which half then as now was valued at $10,000. The will is absolutely silent as to paying the expenses of her coming from Germany to this country. The will is absolutely silent as to paying for her food and clothing and many other expenses. He says, by interpreting the language of his will: "To my niece, Miss Emma Weise, If you will come to Greenville, S. C., and re-

side with my wife for the balance of her life, and be kind and affectionate to my wife, I will give you one-half of my whole estate, real and personal, when my wife dies." Now what meaning does the verb reside bear with it? Webster's International Dictionary defines the verb "reside" as follows: "1. To dwell permanently or for a considerable time; to have a settled abode for a time; to abide continuously; to have one's domicile or home; to remain for a long time. 2. To have a seat or fixed position; to inhere; to lie or to be an attribute or element. 3. To sink; to settle, as sediment." The natural and ordinary meaning of the verb reside is to dwell with for some time. When it is asked, "Does *A.* reside with *B.?*" the popular meaning of the word "reside" is, does he, *A.*, stay for some time with *B.?* Is the abode of *A.* that of *B.?* This act of residing of one person with another is that of dwelling together for some time. It may include the idea of the person with whom another resides of the former furnishing the food to eat to the latter, but not necessarily. Is there anything written in the will itself that carries the view that the testator meant that his wife, Matilda Ann Heldman, was to furnish his niece after his death all the means of living, such as food, raiment, the means of enjoyment of society, of living up to Miss Weise's idea of her station in life. Certainly no information is in the will that Mrs. Matilda Ann Heldman was to advance the money to bring the young lady from Germany to America, yet the condition was that she was not only to *remove* from Germany to Greenville, S. C., but also to *reside* during the lifetime of Mrs. Matilda Ann Heldman. Here it may be that it was useless for the master to hold that the reasons given by the answer for an avoidance of the conditions of the will that Miss Weise was to reside continuously with her aunt, Mrs. Heldman, was not that it was impossible to so reside, but only an inconvenience to do so. Apart from these views, it seems to us that the facts alleged in the answer as showing that Miss Weise thought it impossible to live with her aunt, are not sound. What are these facts? The

defendant, Miss Weise, in her answer, admits that before leaving Germany she knew the contents of the will of her uncle, George Heldman, and after reaching the home of her aunt, Mrs. Heldman, in the city of Greenville, S. C., she made known to her aunt her purposes in coming, and that her said aunt acquiesced and consented to her residing with her. And there is no language in the answer which says that Mrs. Heldman ever objected to Miss Weise remaining with her in said residence. The language of the answer is, "That the defendant 'presumed' she was entitled to and would be accorded the same treatment that a dutiful and affectionate child would receive from its parent." "That the said Mary Ann Heldman became so disagreeable, overbearing, penurious, complaining and unbearable to this defendant, and required and exacted of her the servitude almost equaling that of a slave." "And denied to her any social rights and privileges." "And denied to her many other matters necessary for her to maintain her station in life and necessary for her comfort, health and sustenance." And this defendant was compelled, without any fault on her part, to return to her home in Germany. These are "the matters" upon which the defendant bases the necessity for her to abandon her position at the side of her aunt in her aunt's residence in the city of Greenville. It is claimed that these "matters" (as she denominates them) justify her in saying it was *"impossible"* for her to perform the conditions prescribed in the will of her uncle. We do not deny that it was galling to the pride of a high-spirited young woman to be denied the power to enjoy society and social privileges in keeping with her social position, but that these denials justify the defense of an impossibility of performing the condition in remaining in the residence of an aged relative, we cannot admit. Suppose, as was alleged, she was dictatorial; that she was disagreeable; that she was overbearing; that she did demand unpleasant service; that she did deny her "many matters" necessary for her to maintain her station in life and necessary for her comfort, health and sustenance. What in all

or any one of these grievances amounted to an overpowering necessity for her to quit her place and go home? The master was right; these allegations of fact do not amount to an impossibility for the performance of the condition, and, therefore, even from this defendant's standpoint, is not a good defense. The first exception is overruled.

*Second exception.* This exception complains that the master went too far in his finding of fact, when he held that Emma Weise had not performed the conditions as fixed in the will for her to receive the property; that she had removed to the city of Greenville, S. C., and had resided with her aunt for fourteen months. The Circuit Judge, when he was treating of this part of the master's report and confirmed it, looked upon it from a legal standpoint; he recognized no right on his part to divide a condition into parts when the whole condition was capable of performance. The appellant would lay stress upon the instances of our law, where overseers who were hired for the entire year were allowed to recover for any fractional part of the year, in case for any reason the entire year was not served. *Craig* v. *Pride,* 2 Spear, 121; *Byrd* v. *Boyd,* 4 McC., 247, and other cases which might be cited. These were all cases *inter vivos.* The term of services was short, from one year to another. As Judge O'Neall remarked, in the case of *Craig* v. *Pride, supra,* as quoting from Judge David Johnson, in *Rye* v. *Stubbs,* 1 Hill, 384: "The plaintiff had, therefore, the right to elect whether he would proceed on the original contract for the whole year's wages, or to consider it as ended, and proceed on a *quantum valebat* for work and labor." In the very next case, *Suber* v. *Vanlew,* 2 Spear, 126, Judge Richardson, referring to questions as to overseer's wages, remarks: "that the contract for personal services on the part of an overseer of a plantation expressly for a year, is for the entire year, and on that of his employer to pay wages for the same time. 4 McC., 226, 1 N. & McC., 284, *Cox* v. *Adams.* That if the employer discharges his overseer within the year without justifying cause, he must still pay him his wages for the

entire year; and if the overseer departs in like manner without justifying cause, he loses all his wages.    4 McC., 246. But in general, when planter and overseer separate, the causes assigned are so uncertain that the conclusions are drawn that they separate by mutual consent or through equal faults, and wages for the time of actual service are allowed * * * But the principles of an entire contract, when such has been entered into, must be preserved, and its necessary consequences."   We have been thus careful to elaborate somewhat this vexed matter in the former history of the law in this State as to overseers' wages, in order that the true point may appear.    In the case at bar, the defendant does not in her answer set up any claim to the fourteen months residence with her aunt as justifying any decree in her favor to that alequot share of the $10,000.   She claims the whole sum, alleging that her failure to stay with her aunt until she died in the year 1900, was because she was prevented from so doing.    If we are to regard the testator's proposed bounty to his niece as a contract, it must be held from the language of the testator to be a contract for services by his niece until her aunt's death.   Such was the entirety.   The Circuit Judge was not in error as here claimed.

*Third exception.* We deem our previous holding herein as a sufficient answer to this exception.    It is overruled.

*Fourth exception.* Was the provision in "Item 7" for Miss Weise of such a nature that it must be a condition precedent? As is said in Jarmon on Wills, at page 505, of vol. 2: "No precise form of words is necessary in order to create conditions in wills, any expressions disclosing the intention will have that effect."   These conditions may be either conditions precedent or conditions subsequent. In speaking of these classes, Chief Justice Marshall, in *Friday* v. *King,* 3 Peters, 346, says: "It is certainly well settled that there can be no technical appropriate words which will always determine whether a devise is on a condition *precedent or subsequent.* The same words have been determined differently, and the question is always a question of inten-

tion.    If the language of the particular clause, or of the
whole will, shows that the act on which the estate depends
must be performed before the estate can vest, the condition
is, of course, *precedent;* and unless it is performed, the de-
visee can take nothing.    If, on the contrary, the act does not
necessarily precede the vesting of the estate, but may accom-
pany or follow it—if this is to be collected from the whole
will—the condition is *subsequent.*"    A good illustration of
the condition precedent is furnished by our own case of *Ad-
ministratrix of Rothmahler* v. *Myers et al.,* 4 DeS., **215,**
where in the will of Cohen, Rothmahler along with others
were appointed executors, but Rothmahler did not qualify.
In one of the clauses of the will certain property was given to
his executors.    After Rothmahler's death, his administra-
trix brought her bill for Rothmahler's share under the clause
making a bequest to executors.    But the Court held that
Rothmahler's qualifying as an executor was a condition pre-
cedent.    Of the latter class, the case of *Laurens* v. *Lucas,* 6
Rich. Eq., **217,** furnishes an illustration.    We think the
rule to be one of intention of the testator as developed by his
will; and by that intention, when the same is ascertained,
the condition, whether the same belongs to the class of con-
ditions *precedent* or, on the other hand, conditions *subse-
quent.*    We remark in this connection, that "Item 7" of the
will of George Heldman is our only guide in ascertaining
testator's intention.    We have already quoted this "Item
7."    By it he announces again that all his estate, real and
personal, is given to Mrs. Heldman, his wife, for her natural
life; then comes these words: "First. To my niece, Miss
Emma Weise, *provided* she removes to this State and resides
with my wife, Matilda Ann, during the lifetime of my said
wife, Matilda Ann, and is kind and affectionate to her, the
one-half of my whole estate, real and personal; but if my
said niece, Miss Emma Weise, does not remove to this State
and reside with my said wife, Matilda Ann * * * *then* the
one-half of my whole estate so willed to said Emma Weise, I
do hereby devise and bequeath" over.    What condition, pre-

cedent or subsequent, do the words of the testator intend to create? The word "provided" is significant. This Court, in the recent case of *Roberts & Hoge* v. *Marlboro Grocery Co., ante,* held that the use of the words *provided,* &c., in a statute in this State, created a condition precedent to the jurisdiction of the Court of Common Pleas in the passage of an order for interlocutory injunction and appointing a receiver. It was in effect limiting the exercise of certain powers of the Court on previous condition that certain steps should be taken. It seems to us that the use of the word "provided" in this "Item 7" of the will of Mr. Heldman, imports the same limitation upon the vesting of the estate in Miss Weise. The previous steps that Miss Weise must take on the removal to this State and residing with her aunt during her life, this last: residing with her during her life, could not be determined until she, Mrs. Heldman, departed this life. This is not an instance where the devise and legacy lapse, for the will provides that upon Miss Weise's failure to comply, *then* the estate so provided for her shall go to her mother, her aunt and her cousins, the children of an aunt. The case of *Drayton* v. *Grimke,* Rich. Eq. Cases, 321, shows that the grand-children who were to take an estate on reaching the age of twenty-one years and taking as their surname the name of Drayton, could not claim the estate until entire condition was complied with. We are of opinion that this was a condition precedent. What is the effect of this being held to be a condition precedent? The condition must have been performed during the lifetime of Mrs. Matilda Ann Heldman. The allegations of the answer admit that she, Miss Weise, only resided with her aunt from April, 1893, until June, 1894, and that Mrs. Matilda Ann Heldman died on 21st February, 1900—thus showing that for nearly six years she failed to reside with her aunt. The devise and bequest intended originally for Miss Weise must go over to her mother and others, as directed in the will.

*Exception five.* We cannot agree with the appellant, that the allegations of fact in the answer, admitted to be true by

the demurrer show that a literal compliance with the conditions, became impossible to be performed by Miss Weise. Her answer, as to its allegations of fact, does not show any impossibility of literal compliance with the condition in "Item 7." We see no allegation of fact which fasten any such responsibility upon Mrs. Heldman. The exception is overruled.

*Exception six.* This exception is disposed of by what we have already held. It is overruled.

*Exception seven.* We do not think his Honor erred, as here pointed out. The will was that of George Heldman. "Item 7" thereof was intended partly for the benefit of Mrs. Heldman. It would hardly be supposed that the company of an unformed seventeen-year-old girl was worth to an old woman $10,000. In other words, we mean to say that there was an evident desire in "Item 7" that the particular person named, Miss Emma Weise, was herself to be benefitted. The allegations of fact by the answer carry these conditions. By the terms of the will, it appears that Mrs. Matilda Ann Heldman had nothing to do with the acceptance or rejection of testator's bounty by Miss Emma Weise, though the allegations of the answer show she acquiesced in the purpose of Miss Weise in coming to reside with her. Miss Weise's coming or refusing to come did not add a dollar to Mrs. Heldman's estate or take a dollar therefrom. We are, therefore, not impressed by appellant's proposition to make Mrs. Heldman any active party to her uncle's arrangement for Miss Weise's benefit. This exception is overruled.

*Eighth exception.* The Circuit Judge did not err, as pointed out in this exception. The allegations of fact in the answer show that Miss Weise, by nearly six years, failed to reside with her aunt, Mrs. Heldman, until her death. The answer did not allege as a fact that Mrs. Heldman forbade her house or objected to her remaining in it. So long as Mrs. Heldman did not turn her out of doors or forbid her to live there, the defendant could have remained. She was already there. See in illustration the case of *Magee* v.

*O'Neill*, 19 S. C., 183, 184, 185. This exception is over-ruled.

*Ninth exception.* Our observations touching the matter in this exception referred to have already been made. Exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.