## McCormick v. Reinberger, et al.

(Decided October 25, 1921.)

### Appeal from Fayette Circuit Court.

1. Wills—Construction.—A will which devises a portion of the testatrix's estate to a child with the proviso, "If my said son shall die unmarried and without lawful issue living at his death, then all of the property and estate he takes under this will shall go in equal portions to my other children," vests in the devisee an estate absolute if he be married at his death, though he have no lawful issue living at his death.

2. Wills—Devise Over—Conditions.—Where a devise over is to take effect only upon the failure of the devisee to perform two named conditions the performance of one of such conditions will prevent the taking effect of the devise over.

JAMES G. DENNY and GEORGE C. WEBB for appellant.

FALCONER & FALCONER for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

James McCormick and his wife, Ellen McCormick, were citizens of Fayette county, domiciled in the city of Lexington. They had four children: Alice, who became Mrs. Reinberger, Catherine, who became Mrs. McLaughlin, and Molly, who became Mrs. Byrnes, and a son named Thomas. By a will made in 1892 James McCormick disposed of his entire estate. That part of his will which will aid us in the consideration of this case, reads as follows:

"My entire estate, consisting of real and personal property, notes for money, and all moneys from life insurance, cash on hand and all other things belonging to me, I will and bequeath to my wife, Ellen McCormick, during her lifetime, with the right to dispose of it by will or deed and in such proportions as she may think best among our children."

His wife, Ellen McCormick survived him and in May, 1912, made her will, which, in part, reads as follows:

"The balance of the property owned and possessed by me at the time of my death I give, devise and bequeath to my four children in equal portions, but the portion which my son Thomas may be entitled to under this will shall be held in trust for him for a period of five years after my death. During said period he shall be entitled to the net rents, profits and income thereof, and I hereby appoint the Security Trust Company of Lexington, trustee, to hold, manage and control said property for my said son."

Later Mrs. McCormick by codicil made the following provision:

"The portion which my son Thomas may be entitled to under this will shall be held for him in trust, and after paying the taxes, insurance, and making the necessary repairs upon said property, the balance of rents, profit and income therefrom shall be held by said trustee for a period of five years after my death, and during said period no part of said rent, profit or income shall be paid to my said son. After said period of five years, the trustee may pay to my said son of the rents, profit and income in hand and that may come to hand, as much as twenty-five dollars ($25.00) per month, if in the judgment of said trustee it shall be necessary for his support and maintenance. If my said son shall die unmarried and without lawful issue living at his death, then all of the property and estate he takes under this will shall go in equal portions to my other children."

The son Thomas referred to in the will and codicil married appellant, Bettie McCormick, February, 1913, which was subsequent to the death of his mother. Thomas McCormick made a will by which he provided as follows:

"All of my estate, real, personal and mixed, legal and equitable, vested or contigent, and choses in action, which I may own or be entitled to at the time of my death. I give, devise and bequeath to my wife, Bettie McCormick, to have and to hold the same to herself and her heirs and assigns absolutely forever and in fee simple and to dispose of as she may desire."

Appellant, Bettie McCormick, and her husband lived together until his death, childless, November 9, 1915. It therefore, appears that Thomas McCormick, the son of James and Ellen McCormick, died married but "without lawful issue living at his death." Primarily, this action was brought to obtain a construction of the wills of James and Ellen McCormick, but now Mrs. Bettie McCormick is asserting her right to one-fourth of the estate of Mrs. Ellen McCormick, which requires a construction of that part of the codicil which says: "If my said son shall die unmarried and without lawful issue living at his death, then all of the property and estate he takes under this will shall go in equal portions to my other children." It is the contention of the appellees, Alice Reinberger, et al., that appellant, Bettie McCormick, has no interest in or right to any of the property devised by Ellen McCormick to her son, Thomas McCormick, and by Thomas to appellant, because Thomas died "without lawful issue living at his death," upon which contingency appellees insist, the clause, "all of the property and estate he takes under this will shall go in equal portions to my other children," as set forth in the will of Ellen McCormick, became operative. In other words, appellees contend that Ellen McCormick by her will intended that her daughters should have the portion of the estate devised to Thomas McCormick, unless he should have issue living at his death, and that while she used the words "unmarried and without lawful issue" the expression constitutes but one condition, *dying without lawful issue*. In brief of counsel for appellees it is said: "Where the words 'unmarried and without issue' are used and a man dies leaving a wife but no issue surviving, the estate devised to the man is determined and passed by devise over," and in support of this position the following old English

and American cases are cited: Maberly v. Strode, 3 Vesey Jr., page 450; Bell v. Phyn, 7 Vesey Jr., page 453; Wilson v. Bayly, 3 Baron P. C., page 195; Hapworth v. Taylor, 1 Cox, page 112. No recent cases are cited.

On the other hand, appellant insists that the will of Ellen McCormick, under which she claims, means exactly what it says and that the property devised to the son, Thomas McCormick, did not pass to or become vested in his sisters or their descendants until and unless the said Thomas McCormick died both *unmarried* and *without lawful issue living at his death*. It is appellant's insistence that Thomas McCormick took a vested interest in the estate devised by Ellen McCormick subject to be defeated only by the death of the said Thomas McCormick both unmarried and without lawful issue living at his death and that both these conditions must concur in order for appellees to take the property. As Thomas McCormick was married but left no lawful issue living at the time of his death it appears that one of the conditions necessary to prevent the passing of the estate, under the devise over of Ellen McCormick to the other members of the family had taken place before his death, although the other, "lawful issue living at his death," had not happened. If the condition of the will had been that Thomas McCormick could not take the property unless he married and had lawful issue living at his death the case would be a very different one and he could not take the property under such a devise, for he had performed only one of the conditions, but the clause of the will under consideration is stated in the negative so as to give him the absolute title to the property unless he died both unmarried and without lawful issue. The testatrix fixed the conditions upon which the estate should fail as to Thomas, and they may be stated as follows: "If my said son shall die unmarried . . . the property and estates he takes under this will shall go in equal portions to my other children," unless "my said son shall die . . . (leaving) lawful issue living at his death." The converse of this, is, if my said son shall die married or leaving lawful issue living at his death the devise over shall not take effect. In either of said events the estate is not to fail as to Thomas. The language of the will is such as to invest Thomas with the estate unless he died both "unmarried and without lawful issue living at his death." If he married or if he left lawful issue living at his death the estate did not fail as

to Thomas and the devise over-was not to take effect.   We
are mindful of the construction some courts anciently
put upon the expression "unmarried and without lawful
issue."   Kennedy v. Arthur, 3 Ky. Opinions 466; Bell
v. Phyn, 7 Vesey (English) 457.   In holding the expres-
sion to mean no more than "dying without lawful issue,"
it was said that one could not have lawful issue unless
married and that *married* meant having been married
whether the spouse survived the devisee or not.   Anscient-
ly the word *married* appears to have acquired such a
technical meaning which yet obtains, but we are of opin-
ion that the word was used in the codicil by the testatrix,
Ellen McCormick, in its ordinary, common and daily
sense, which implies and carries the idea and thought
that the one spoken of is married and such relation actual-
ly exists at the time stated.   Inevitably, when the whole
context of the will and codicil of Ellen McCormick is con-
sidered, the mind is forced to the conclusion that the tes-
tatrix at that time regarded her son as wayward, im-
provident, reckless or incapable of managing his estate.
She placed it in the hands of a trustee.   She probably
wanted him to marry and have issue and to induce him to
do so she made the vesting of an irrevocable estate de-
pend upon his marriage or the leaving of lawful issue liv-
ing at his death, no doubt entertaining the idea that the
son would become more dependable if married and sur-
rounded by a family.   If in this case, as in the case of
Kennedy v. Arthur (3 Ky. Opinions 466), the context of
the will aided and supported the construction of the
phrase "unmarried and without issue" to mean "without
lawful issue," that case doubtless would be sufficient au-
thority and we would probably follow the rule there an-
nounced, but we do not find anything whatever in the
context of the testamentary papers before us which indi-
cates in the slightest that the testatrix did not lay as
much stress on and attach as much importance to the
word "unmarried" as to the balance of the conjunctive
clause "without lawful issue living at his death."   Cer-
tainly in cases where the context of the will supports
such construction no other should be given (28 R. C. L.
page 222), for such a rule is of the essence of the pri-
mary and cardinal rule controlling the construction of
testamentary papers, which requires all other rules to
yield to that one which makes the intention of the testa-
tor, if ascertainable, final and conclusive.   Nowhere in
the will, supplemented by the codicil, is there a word to

indicate a purpose of the testatrix to have the devise over to the other children take effect if Thomas *married,* even though he was not blessed with issue living at his death. To give the phrase any other construction than that which we have indicated would be to deny to the words their literal meaning when there was nothing in the context which argued against it. Where the meaning of the words used is unambiguous and clear it must not be defeated by conjecture. "In construing a will effect should be given to every word and clause if not inconsistent with the general intent of the whole will when taken together. It is presumed that every word is intended by the testator to have some meaning, and no word or clause in the will is to be rejected to which a reasonable effect can be given. Where two constructions are suggested, the one disregarding a word or clause of a will and the other giving effect to the will as a whole, the latter must be adopted." 28 R. C. L., page 217. The same text says: "In construing a will it should be read in the ordinary and grammatical sense of the words employed, unless some obvious absurdity or some repugnance or inconsistency with the declared intention of the testator, as extracted from the whole instrument, will follow from so reading it." 28 R. C. L. 221.

All the rules of construction of wills are rested upon reason, and if the reason for the application of the rule does not exist the rule cannot be invoked to give a testamentary paper a meaning different from that which its language, when given its usual and common meaning, would import. We, therefore, ask for what reason are we to hold that the word "unmarried" adds nothing to the meaning and effect of the clause "without lawful issue living at his death," except the reason assigned in some of the old English cases to which we have made reference? Is the word itself meaningless? Or is its meaning embraced in and covered by the broader term "without lawful issue living at his death?" We think not. It is possible for one to have lawful issue living at his death although he have no wife living at that time. It is quite probable the testatrix used the term "unmarried" in the usual and commonly accepted sense—not having a wife at the time of his death—and not in the technical sense—not having once taken a wife. Testatrix probably contemplated the marriage of her son, the possibility of the wife's death before the son, leaving issue at the death of the son, or testatrix may have been

providing against the contingency of the death of her son's child or children before his death and that he would depart this life leaving a wife whose child or children had preceded her to the grave, or, if we may speculate, she may have contemplated a score of other situations which might have arisen, making the word "unmarried" of controlling importance. However this may be she did make use of the word "unmarried" in a most natural and apt way without indicating in the sentence in which it is employed or in any part of her will or codicil that she intended for that word to be disregarded or that she used it in a narrow or technical sense or in any sense except that in which it is commonly used by persons in every day intercourse. We must, therefore, conclude she used the word to meet the situation with which we are now dealing, for it is a natural one which might well have been anticipated, the son's demise leaving a wife who had borne no child. If so the word "unmarried" is not covered and included in the expression "without lawful issue." By the word "unmarried" she meant a condition which is not always consonant with the expression "without lawful issue," for one may have been married but subsequently have no wife, although he has by the said wife a child or children. We know of no warrant or authority for arbitrarily taking from the testamentary paper before us the word "unmarried" and refusing to give to it its fair, common and usual meaning, there being nothing in the context of the will to justify or support such verbal sabotage.

There is some intimation if not argument that the word "and" should be read "or," in the expression "unmarried and without lawful issue," so that the devise over would take effect even if Thomas McCormick was married. There is much authority for the substitution of the word "and" for "or" (note to 25 L. R. A. (N. S.) 1153), but this is never permissible except in cases where it is plainly necessary to so read the testamentary paper in order to effectuate the intention of the testator as manifested from its entire context. 28 R. C. L. 226.

The rule is ably and elaborately discussed in the case of Travers v. Reinhardt, 205 U. S. 428, where Justice Harlan, speaking for the Supreme Court, said: "It is contended here, as it was in the courts below, that the words in the above general provision, that 'if any of my sons should die without leaving a wife or child or child-

ren living at his death,' should be interpreted as if it reads 'if any of my sons should die without leaving a wife and child or children living at his death.' The court is thus asked, by interpretation, to substitute the word 'and' in place of 'or' in the above sentence.

"Looking at all the provisions of the will and ascertaining as best we may the intention of the testator, we perceive no reason for interpreting the words used by him otherwise than according to their ordinary, natural meaning."

After stating the general doctrine with respect to the substitution of the conjunctive for the disjunctive the court said:

"This general doctrine is not controverted, but there are other cardinal rules in the interpretation of wills which must be regarded. Mr. Justice Story, speaking for this court, said that effect must be given 'to all words of a will, if, by the rules of law, it can be done. And where words occur in a will their plain and ordinary sense is to be attached to them, unless the testator manifestly supplies them in some other sense.' Wright v. Dunn, 10 Wheat. 204, 239. 'The first and great rule in the exposition of wills,' said Chief Justice Marshall, 'to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law.' Smith v. Bell, 6 Pet. 68, 75; Finlay v. King, 3 Pet. 346, 377. The same thought, in substance, was expressed by Lord Chancellor Eldon in Crooke v. Vandes, 9 Ves. 197, 205. He said that 'where words have once got a clear, settled legal meaning, it is very dangerous to conjecture against that, upon no better foundation than simply that it is improbable the testator could have meant to do one thing by one set of words having done another thing, using other words, as to persons in the same degree of relation to him.''

Another feature of this will was before this court in the case of McCormick v. Security Trust Co., 184 Ky. 25, but that opinion deals only with the right of the donee under the power created by the will of James McCormick to convey part of the real estate to one of the children in whose favor the power speaks.

We, therefore, conclude that by the expression "unmarried and without lawful issue," used in the codicil, the testatrix intended for the devise over to the other children to become effective only in case Thomas did not marry and did not leave surviving him either a *wife* or

*issue of his body* to whom his share of her estate could pass and vest absolutely. In arriving at this conclusion we have adopted the contention of counsel for appellees, that Ellen McCormick had the right and power, under the will of James McCormick, to limit the estate devised to their son Thomas.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.